CHRISTIAN LOETSCHER, v. TIMOTHY DILLON, Appellant.

Action for Conversion: CORPORATE STOCK: SALE TO MEMBERS: APPLICATION OF PROCEEDS: PARTNERSHIP. The fact that certain members of a corporation jointly purchase corporate stock of another member, the only object being to increase the value of their respective interests and aid in disposing of the corporate property, does not constitute such purchasing members a partnership, and one of them coming into possession of the proceeds of such sale is not precluded on that ground from applying a portion to the payment of indebtedness due from the seller to him.

Same: TRUST FUND. Nor will the proceeds of such sale, in the hands of one of the purchasers, where there are no limitations regarding its expenditure, constitute a trust fund, even though the stock at the time of the sale in fact belonged to one of the purchasing members

Same: DISTRIBUTION OF SHARES. The fact that defendant was trustee of the stock for distribution did not justify him in refusing to issue to plaintiff his share on the ground that plaintiff refused to account for that portion of the proceeds of the sale applied to his own debt due from the seller.

Assessment on Stock: · ABANDONMENT; EVIDENCE. Failure of plaintiff to pay an assessment on the stock to which he was entitled, prior to its issuance to him, did not constitute abandonment of his right to the same, and defendant acquired no right on account thereof except to hold the stock subject to a lien for the assessment paid by him.   Evidence considered.

Sale of Corporate Property: PROCEEDS OF CONVERTED STOCK.   On a sale of the corporate property, the shareholder whose stock has been thus converted is entitled to the full amount for which it was sold.

Same: MEASURE OF DAMAGES.   When corporate stock which has no fixed market value is improperly withheld by one against the demands of the owner for a transfer and is converted into money by a sale of the corporate property, the owner may recover the full amount of the proceeds of the sale, with interest at six per cent., from date of its payment.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

### TUESDAY, JANUARY 27, 1903.

ACTION to recover damages for the conversion of sixteen and two-thirds shares of the capital stock of a corporation known as the Dubuque Specialty Machine Works. On motion of defendant, without objection by plaintiff, the case was transferred to the equity docket. After a hearing on the evidence the court rendered judgment for plaintiff for $817.05 and costs, from which judgment each party appeals. Defendant, having first served notice of appeal, will be treated as appellant.—*Affirmed.*

*William Graham* and *R. W. Stewart* for appellant.

*J. C. Longueville* and *McCarthy, Kenline & Roedell* for appellee.

McCLAIN, J.—This action was originally brought at law, and no reason is apparent on the record why it should

have been transferred to the equity docket. Nevertheless, having been tried as an equity case, we must determine it *de novo*. Defendant's appeal, although raising questions of fact only, involves the merits of the entire controversy, and will be first determined.

In January, 1894, plaintiff and defendant, with others, were stockholders in the Dubuque Specialty Machine Works, a corporation organized some years before through the instrumentality of one Smith, who transferred to it certain patent rights, receiving in exchange preferred stock. At this time the corporation was not in a very prosperous condition. Its stock was not readily salable, only a few transfers having been made, and these at from $25 to $35 per share, of the par value of $100. Smith was apparently involved in financial embarrassments, and his stock was largely, if not entirely, pledged for his personal obligations. Furthermore, Smith was endeavoring to effect a sale of the entire corporate property, having been vested with authority to do so by the corporation. The other stockholders seem to have been in general accord as to the desirability of effecting such sale. Under these circumstances, Smith secured the co-operation of defendant in a scheme to dispose of one hundred shares of preferred stock for $3,000, to enable Smith to continue efforts which he had been making in the eastern states to effect a sale of the property. The one hundred shares of stock to be sold were represented as being the stock of Smith, but were in fact the stock of defendant. Smith and defendant induced plaintiff, who was not only a stockholder in the corporation, but had been instrumental in organizing it, and was also a creditor of Smith's to a considerable amount, to become one of six persons (defendant being another) to subscribe the $3,000 for the purchase of the one hundred shares. It was agreed that the $3,000 should be raised on a joint note signed by the six purchasers, made payable to Smith, to be negotiated at a bank in

which the plaintiff was a depositor. When the note was signed under this arrangement, plaintiff accompanied Smith to the bank, had the amount of the note, less dis-count, entered as a credit on his own bank account, and paid Smith the balance of the amount over $1,500, which was retained by plaintiff, and indorsed on obligations held by him against Smith personally.

The subsequent difficulties between plaintiff and defendant, culminating in the present lawsuit, grew out of a contention on the part of defendant, in which he was,

1. CORPORATE stocks; sale to members: application of proceeds: partnership.

perhaps, to some extent encouraged by Smith, that plaintiff was guilty of breach of faith in thus applying to the payment of his own claims against Smith one-half of the amount. which was raised for Smith on stock assumed to be Smith's, but not actually belonging to him, and for the avowed purpose of enabling Smith to prosecute the business of selling the corporate property; and it will be convenient to determine at once whether the $3,000 fund was in any sense a trust or partnership fund, which plaintiff could not, in good faith, in view of the circumstances known to him under which it had been raised, apply to the payment of his own claims. There evidently was in no proper sense of the term any partnership among the six purchasers of these one hundred shares of stock. Each became the owner of an undivided one-sixth thereof, and each paid for his share a sum which was certainly not greatly, if at all, in excess of the supposed value of the stock. It may be that these parties would not have become purchasers of the stock, had they not thought that the sale of it would enable Smith to work more effectively in the disposition of the entire plant, with a resultant benefit to them as to the value of other stock held by them, as well as of the stock purchased. But in no sense was there any joint enterprise in which these six purchasers became interested with a view of any joint participation in profits or sharing:

in losses. They were willing to buy the stock, in the hope, no doubt, that by doing so they would be benefited; but the benefit, if any, resulting, would be alike to all the stockholders of the corporation.

Nor was the $3,000 thus raised in any proper sense a trust fund. It was to be paid to Smith, without reservation or limitation as to the use to which it was to be applied, and it was paid to him under the assumption that it was the purchase price for stock owned and sold by him. There is not the least evidence that Smith was under any legal or moral obligation to use the money for any specified purpose. The amount which was actually paid into his hands was disbursed by him, so far as the evidence indicates, in payment of his own personal obligations,—$300 of it being paid to defendant,—although as to this it must be said that defendant claims to have received this amount in return for money already advanced by him to Smith in promoting the sale of the plant. At any rate, a letter of Smith's to plaintiff, written from Chicago a few days after receiving the amount, and evidently before he had taken any further steps in promoting the sale of the plant, indicated that the money was already disposed of, and that he was in need of more; and it appears that plaintiff, in response to this letter, supplied Smith with further funds on his own account. Whether this letter was properly received in evidence, we do not now determine; it being sufficient to say that, so far as there is any indication whatever in the record, Smith was conceded by all parties to have the right to dispose of the proceeds of these one hundred shares of stock for his own purposes, and as he should see fit. If he had, without the assistance of plaintiff, discounted the $3,000 note given to him for the purchase price of the stock, he would have had the undoubted right to use $1,500 of it, if he saw fit, in payment of his personal obligations to plaintiff, without any breach of trust on

2. SAME; trust fund.

his part.   The money was not, therefore, a trust fund; and plaintiff was not guilty of any breach of trust in receiving from Smith, or—what was exactly the same thing —deducting from the proceeds of the note discounted by Smith, $1,500 for payment of his own claims.   Indeed, we are unable to see any connection whatever between the retention of $1,500 by plaintiff out of the proceeds of this note made payable to Smith, and the subsequent conversion by defendant of plaintiff's one-sixth interest in the one hundred shares of stock, to which we will more specifically refer hereafter.   If the proceeds of the note were a trust fund, a portion of which plaintiff improperly converted, then the action against plaintiff would be for a wrong done to the six joint owners, or perhaps to the corporation, or possibly to Smith himself, as the trustee of such fund.   As a matter of fact, Smith did bring suit in the federal court against this plaintiff to recover the $1,500, but in that suit he was defeated.   It certainly was not for the defendant alone, and in his individual interest, to complain, as he did at once, with reference to the retention by plaintiff of a portion of the so-called trust fund. The money was in no event to be paid to him, although, as a matter of fact, unknown to the others of the joint owners, this stock was his own individual property.

II.   We come now to the matter of the alleged unlawful conversion by defendant of plaintiff's one-sixth interest in the one hundred shares of stock, for which he is sued by plaintiff in this action.   When the note for 3. SAME: distribution of shares. the purchase price of the stock was executed, the stock was left in the hands of defendant, to be distributed to the other purchasers when the note should be paid; and when that was done, some six months afterwards, defendant did secure the issuance to each of them, except plaintiff, of a certificate for sixteen and two-thirds shares of preferred stock, but, instead of having a like amount transferred to plaintiff, the certificate for plain-

tiff's share was taken by defendant in his own name, and the transfer was so entered on the books of the company. Thereupon plaintiff made demand of defendant for his portion of the stock, which demand defendant refused to comply with until plaintiff should account for and turn over the $1,500 previously retained by him out of the purchase price due to Smith. As already indicated, we think defendant had no right to impose this condition on the issuance or transfer of plaintiff's proportion of the stock to him. Defendant was not the trustee of the fund, but the trustee of the stock merely for distribution when the joint note given to Smith for the purchase price should be paid. Plaintiff had paid his proportion of this note, and nothing remained to be done, as between him and defendant, to entitle him to his proportion of the stock.

Defendant contends, however, that plaintiff had abandoned any claim for his proportion of the stock, but we find no evidence supporting such a contention. It is **4. ASSESSMENT** true that, about the time defendant made dis-**on stocks; abandonment;** tribution of the shares held by him in trust **evidence.** for the other purchasers, an assessment of $5 per share was made on all the preferred stock, and this assessment was not paid by the plaintiff; but at the time of the assessment he did not have the stock, to which he was entitled, and it had already been transferred on the books of the corporation to defendant. Evidently, until plaintiff had become the owner of the stock by proper transfer, he was under no legal obligation to pay the assessment to the corporation; and we cannot say that, even if defendant paid the assessment—the stock standing then in his name—he would by that acquire ownership. His right would be simply to hold the stock, subject to a lien for the assessment paid. He seems never to have asserted a right to hold these shares by reason of a lien for an assessment paid by him, but to have insisted from the time plaintiff's proportion of the stock was transferred to him

(defendant) on the books of the corporation that ·he (defendant) was the absolute owner thereof by reason of some transaction between himself and Smith.   But it is apparent that Smith had no interest in or right to control plaintiff's proportion of the one hundred shares of stock for which he (Smith) had received full compensation, even conceding that at the time of the sale this stock did actually belong to Smith.   It may be that, after the assessment of $5 a share made by the corporation on the stock, the shares to which plaintiff was entitled were  of little market value, but plaintiff was entitled to them, and seems to have insisted throughout that he should have them; and we cannot discover any theory on which defendant can claim to have become the owner thereof. When plaintiff was sued in the federal court by Smith for the recovery of the $1,500 retained by him out of Smith's money, plaintiff seems to have set up a counterclaim for the conversion by Smith of the shares of stock, but the finding of the court was that Smith was not liable to plaintiff on that account.   Of course, that adjudication determined nothing with reference to the defendant's liability to plaintiff therefor.

Subsequently to the transactions hereinabove referred to, a sale of the entire property and rights of the corporation was effected to a corporation organized in an eastern

5. SALE of corporate property; proceeds of converted stocks.

state, and out of the proceeds of the sale the Dubuque Specialty Machine Works made distribution to its stockholders, so that they received for each share of stock something like $51; and plaintiff asks to recover from defendant the amount thus received by the latter on the sixteen and two-thirds shares of stock standing in defendant's name, but really, as we have already seen, the property of plaintiff, and we find that the action of the lower court in giving him judgment against defendant was, so far as defendant is concerned, just and proper.

Plaintiff's appeal raises a question as to measure of damages. The facts to be considered in determining this question are that the conversion of the stock took place in

5. SAME: measure of damages. November, 1894, when defendant had transferred to himself on the books of the company the shares of stock to which plaintiff was entitled; that plaintiff demanded the stock in December of the same year, and again in May following; and that not later than the following August the sale of the plant had been made, and a portion, at least, of the proceeds had been distributed to the stockholders. The question as to measure of damages for conversion of stocks has been discussed by many courts, and different rules have been applied, depending, it seems, largely on the circumstances of each case. See the cases collected and fully discussed in 2 Sedgwick, Damages, section 507, *et seq.* So far as any general rule can be formulated, we think that the weight of authority supports the proposition that, where the stock is marketable, the owner bringing an action for its value may recover the highest value which it attains between the time of conversion and a reasonable time for replacing it, if the purchase price has not been paid, or, if the purchase price has been paid, then the highest value between the conversion and the time of bringing action, provided the bringing of action is not unreasonably delayed. See the cases cited in Sedgwick, Damages, *supra.* We do not have occasion now to definitely announce any general rule, for this was plainly not marketable stock. It was, so far as appears, never listed on the stock exchange, was limited in amount, and but few transfers were made. No doubt, the plaintiff might, by election to demand the value instead of the stock, have fixed the time with reference to which the value should be estimated, but he did not do so. He seems to have insisted throughout that he was entitled to the shares of stock, and undoubtedly he could, by a proper proceeding, have compelled the transfer by defendant

to him of the property, which was, in effect, held by
defendant in trust for him.    There was no unreasonable
delay on his part in bringing suit, for there was a contin-
uous controversy between him and defendant, accompan-
ied with negotiations looking to an ultimate settlement
of their differences; and in about six months after the
stock was converted by defendant the corporate property
was sold, and the rights of the stockholders were practic-
ally transformed into claims for their proportionate shares
in the purchase price received by the corporation.    Under
these circumstances, we think it is reasonable to say that
defendant ought to account to plaintiff for whatever he
has received from the corporation on account of plaintiff's
shares of stock which he (defendant) held in trust, with
interest on the sums so received at six per cent. from the
time of their receipt until the date of the judgment.    The
correctness of the computation made on this basis, pre-
sented by counsel for plaintiff in argument, is not ques-
tioned by counsel for defendant, and we assume that it is
correct.    In accordance with this computation, the judg-
ment for plaintiff should have been for $1,002.05.

   As thus modified, the judgment of the lower court is
AFFIRMED.