A. F. GROELTZ, Appellant, v. ELI COLE, JR., AYLMER COLE, and THE GERMANIA LAND AND INVESTMENT Co., Appellees.

**Pledges:** FORECLOSURE: NOTICE. One in possession of corporate stock as a pledge to secure the payment of money borrowed by him to meet assessments thereon, cannot cut off the own-

er's rights therein by a simple notice to him that if he fails to pay the same within a specified time the pledgee will do so and claim the stock as his own.

**Corporate stock:** PROOF OF OWNERSHIP. On an issue of the ownership of corporate stock, where both parties claim title through a receiver's sale, it is unnecessary for plaintiff to prove the receivership, as the same is a collateral inquiry.

**Receiver's sale:** PURCHASE BY RECEIVER. Although the indirect purchase of property by a receiver at his own sale is irregular and voidable, it is not necessarily void, nor is it subject to collateral attack.

**Estoppel.** In an action to recover the proceeds of corporate stock pledged to defendant, plaintiff's conduct in failing to prosecute his claim is held insufficient to estop him from claiming title to the stock.

*Appeal from Jackson District Court.*— HON. A. J. HOUSE, Judge.

WEDNESDAY, June 14, 1905.

SUIT in equity to recover the proceeds of certain corporate shares of stock received by the defendants Cole and Cole from the assets of the Germania Land & Investment Company. Defendants denied plaintiff's ownership of the stock, and pleaded other defenses, to some of which we shall have occasion to refer during the course of the opinion. The trial court dismissed the petition, and plaintiff appeals.— *Reversed.*

*Jamison & Smythe* and *Thomas & Thomas,* for appellant.

*G. L. Johnson* and *Cole & Cole,* for appellees.

DEEMER, J.— The firm of Bertelsen & Groeltz, of which plaintiff was a member, purchased of defendant Eli Cole fifty shares of stock in the Germania Land & Investment Company, agreeing to pay something like $1,500 therefor. As part of the purchase price they gave Cole a note for

$381, and it was agreed that the stock should stand in the name of Cole upon the books of the company, and that he should retain possession of the certificates as collateral security for the note. The stock was not paid up, but was subject to calls and assessments, which it was agreed Cole should pay, and hold the stock as security therefor. Plaintiff and his partner, Bertelsen, had some difficulty, and an action was brought, which resulted in the appointment of plaintiff as receiver for the firm. Plaintiff, before his appointment as receiver, had paid all claims which defendant Cole had against the firm, either for the purchase price or for advancements made upon the stock. These payments were completed some time in February of the year 1895, and plaintiff requested the defendant Eli Cole to hold the stock in his own name, as he did not wish his partner to know that the obligations of the firm on account thereof had been extinguished. Thereafter defendant Cole made an assignment of the stock to plaintiff as receiver, and the evidence shows that the receiver on or about April 22, 1895, made an assignment of the stock to the defendant Cole. Cole thereupon, without any consideration, and at plaintiff's request, made an assignment of the stock to one W. H. Groeltz. Cole did not know of the assignment of the stock to him by the receiver at the time it was made, and the consideration therefor was in fact paid by plaintiff, who was the purchaser at the receiver's sale, he being also the receiver. Bertelsen consented to Groeltz's bidding for and buying the stock, and is not, so far as shown, making any complaint thereof. The debts of the firm have all been paid, although the receiver, so far as this record discloses, has not yet been discharged. After these transactions, defendant Eli Cole continued to pay calls and assessments upon the stock as they were levied from time to time, for which he was reimbursed by Groeltz. In the year 1898 Eli Cole enlisted in the Spanish-American War, and left the state in consequence thereof. In September of that year an assessment of $2,900

was levied upon the stock to pay some incumbrances upon land owned by the corporation, and defendant Aylmer Cole, a brother of Eli, who had charge of Eli's business during his absence, notified plaintiff thereof. Thereupon plaintiff attempted to dispose of the stock, but was unable to do so. He then informed defendant Aylmer Cole that he had an arrangement with Eli whereby he, Eli, was to pay the assessments and hold the stock as security until plaintiff was able to reimburse him therefor, and thereby induced Aylmer to borrow the money with which to pay the large assessment. Eli Cole returned late in the year 1898, and, being told of the situation, repudiated the whole matter, and denied that he had arranged with plaintiff to furnish him any more money. The Coles thereupon endeavored to induce plaintiff to pay the note which had been given for the $2,900, and told him frequently that if he failed to pay within a certain time they should consider that he had abandoned the stock. Plaintiff did not meet these demands, but insisted that Eli Cole was to take care of these assessments, holding the stock as security, and that plaintiff would reimburse him as he could. This, as we have said, was in the year 1898. In 1900 plaintiff went to South Dakota, where the larger part of the property belonging to the corporation was located, to look over the land owned by it, and to make an effort to raise the money with which to pay the assessment. He again went there in 1901 to attend a meeting called for the purpose of winding up the corporation, and at that time he claimed to own the stock now in controversy. He paid some assessments levied after the receiver's sale, but has not refunded the $2,900. The business of the corporation was finally closed up, and, as a result thereof, defendants Cole and Cole received $3,700 worth of real estate, $2,007.50 in cash, and dividends amounting to $125. In many letters written by each of the defendants it appears that even after the receiver's sale they recognized plaintiff as their debtor to the amount of the assessments paid, and that they held the

stock as security; but as plaintiff failed to reimburse them for their expenditures, they undertook, in November of the year 1898, to foreclose and forfeit plaintiff's rights by a notice that, if he did not pay the note given by 'them with which to secure the money to pay the assessment, they would do so and claim the stock as their own. In 1902 plaintiff made inquiry of defendants as to the condition of the corporation, and as to what disposition had been made of its assets, but was unable to secure a reply. This suit was commenced in the year 1903.

There is no doubt whatever that defendant Eli Cole held the stock in pledge down to the time of the receiver's sale, and little question, in view of the correspondence between the parties, that they held the same after 1. PLEDGES: fore-closure; notice. the sale, for a time at least, in the same way. Aylmer Cole never purchased the stock, and it has never stood in his name. The only connection he had with it occurred when his brother, Eli, was away from home in the army, and he then advanced the money to pay the assessment, believing that there was an arrangement between his brother, Eli, and plaintiff that he should do so and hold the stock as security. Even though it be found that there was no such arrangement and that the advancement was secured by fraud, this would not of itself transfer the title to the stock to the defendant Aylmer Cole. He never understood that he was purchasing it. His notion, erroneous though it may be, was that he was to hold it as security for the money advanced to pay the assessment, just as his brother would have done had he been here. With such an understanding he attempted to cut off plaintiff's rights simply by a notice to pay within a certain time. As a pledgee, this he could not do. *Robinson v. Hurley,* 11 Iowa, 410; *Croft v. Colfax Co.,* 113 Iowa, 455; *Loetscher v. Dillon,* 119 Iowa, 202.

Defendants' counsel do not challenge this rule, but they contend that plaintiff is not entitled to recover: First, be-

cause he has not established his ownership of the stock by

2. CORPORATE
STOCK: proof
of ownership.

competent evidence; second, because he has acquiesced in defendants' claim, and been guilty of such laches as prevent a recovery. There is no doubt that the partnership of which plaintiff was a member at one time owned the stock, and that it was held by the defendants in pledge, or as collateral security for the purchase price and for advancements to be made. It is also clear that the firm paid all of these charges, and that the defendant Eli Cole made an assignment of the stock to plaintiff as receiver of that firm. As such receiver, he undertook to make an assignment thereof to the defendants or one of them. Without such an assignment defendants have no claim upon or title to the property, as they admit the assignment of the certificate to the receiver.

Plaintiff claims that the assignment back to defendant Eli Cole was for his, plaintiff's, benefit, and that Eli Cole was not the real purchaser; and defendants admit that they paid nothing for the assignment from the receiver, and knew nothing of it at the time it was made. They also admit an assignment in virtue of their title from the receiver to W. H. Groeltz, plaintiff's brother. As each party is claiming under and through a receiver's sale, and as defendants admit that they assigned the stock at one time to plaintiff as a receiver, and that they received title back again from him, they, defendants, are not in position to question plaintiff's receivership, or to demand that he introduce record evidence of the receivership proceedings, or of the receiver's doings thereunder. Each party admits that there was a receiver's sale, but plaintiff insists that he was the real purchaser thereat, although title was taken in the name of one of the defendants; while defendants admit that they assigned the stock to plaintiff as receiver, who thereafter reassigned the same to them. As both claim under the same title, there was no need of making further proof of the receivership. The question here is not from whom did defendants acquire

title, for they admit that they got it through a receiver; but how do they hold the stock? The matter of the appointment of a receiver, in so far as this matter is concerned, is a wholly collateral inquiry.

But defendants say that, as plaintiff claims to have purchased at his own sale, he being a receiver, the transaction was void, and he can take nothing thereunder. Such 3. RECEIVER'S SALE: purchase by receiver. sales are undoubtedly irregular and voidable at the option of the original owners of the property, and perhaps as to creditors. But they are not void, and cannot be collaterally attacked. *Carr v. Houser,* 46 Ga. 477; *Yetzer v. Applegate,* 85 Iowa, 121. Actual fraud is not pleaded, nor is anything made of the fact that plaintiff was attempting through these various transactions to defraud his partner, and that the law should leave him without a remedy.

II. Next, it is argued that plaintiff was guilty of such acquiescence in defendant's assertion of right in and to the stock, and of such laches in asserting his claim that 4. ESTOPPEL. he should not be heard to complain. Such acquiescence as is here relied upon is a species of estoppel, and is generally based upon the fact that one party alters his position by reason of the silence of the other. In this case defendants did nothing they would not have done had plaintiff proceeded in a different manner from what he did, and plaintiff is not estopped from claiming title to the stock. *Joseph v. Davenport,* 116 Iowa, 268. He was not so dilatory in asserting his claim that he should be barred of recovery. *Loetscher v. Dillon, supra.*

The record convinces us that defendants are relying upon mere technicalities to defeat the plaintiff out of his claim. He, plaintiff, has invested in these shares, provided he paid to himself as receiver the amount he claims, nearly $4,300, and he has had nothing out of them. Defendants have received the entire proceeds thereof, and have invested therein something like $3,233.33, not counting interest.

They received in cash and lands a total of $6,482.50. They should also be allowed interest on the advancements made by them. It is agreed that they shall have $250 as trustees' fees. For the balance in their hands, amounting to $2,400, plaintiff should have judgment. This he may have in this court or in the trial court, at his election filed within the proper time. The case must be, and it is, *reversed.*