William F. SHIDLER, et al., Plaintiffs,

v.

ALL AMERICAN LIFE & FINANCIAL CORPORATION, A Corporation, et al., Defendants.

No. 64746.

Supreme Court of Iowa.

Nov. 12, 1980.

Albert L. Harvey, Kenneth L. Butters, and Bruce H. Stoltze of Heartney, Harvey, Butters & Ottoson, Des Moines, Robert L. Ulstad, Fort Dodge, and J. Vernon Patrick, Jr. and Thomas Gallo of Berkowitz, Lefkovits & Patrick, Birmingham, Ala., for plaintiffs.

C. Carleton Frederici of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, and Aaron J. Kramer, Alfred Elliott, Walter C. Greenough, and Reinette Morin of Schiff, Hardin & Waite, Chicago, Ill., for defendants.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

UHLENHOPP, Justice.

This proceeding involves construction of Iowa statutory law relating to corporate mergers. The United States District Court for the Southern District of Iowa, Central Division, certified to us a legal question on that subject under the Uniform Certification of Questions of Law Act, 1979 Sess., 68 G.A., ch. 144. Involved is an issue of separate voting by different classes of corporate stock. *See also Berger v. General United Group, Inc.*, 268 N.W.2d 630 (Iowa 1978).

Reduced to the basics, the facts certified to us are as follows. In May 1973 an attempt was made to merge General United Group, Incorporated (GUG), a domestic corporation (and its subsidiary, United Security Life Company (USL), which need not be separately considered), into All American Delaware Corporation, a foreign corporation, which would be the surviving entity. At that time GUG had outstanding 105,000 shares of preferred stock, 2,959,650 shares of common stock, and 10,623,150 shares of class B common stock. The preferred and class B common stock had specified conversion rights into common stock. All of the preferred and class B common stock and 67,043 shares of the common stock were owned by another corporation, All American Life & Casualty Company (Casualty), and 2,892,607 shares of the common stock were owned by the public. Casualty also owned all of the stock of All American Delaware, into which GUG was to merge.

The agreement relating to the GUG–All American Delaware merger contained these clauses:

4.1 *Cancellation of Certain Shares.* Each share of the GUG Preferred Stock, GUG Common Stock and GUG Class B Common Stock which immediately prior to the Effective Date of the Merger is outstanding and owned by Casualty, shall be cancelled and retired upon the Effective Date of the Merger and by virtue thereof, without any action on the part of the holder or issuer thereof, and all certificates which theretofore evidenced such shares shall be cancelled and no cash or securities or other property shall be issued in the Merger in respect thereof.

. . .

. . . . .

4.3 *Conversion of Certain Shares.* (a) Except for those shares which are owned by Casualty and therefore subject to Section 4.1, each share of GUG Common Stock, which is outstanding immediately prior to the Effective Date of the Merger, shall, by virtue of the Merger and without any action on the part of the holder thereof, be converted into and exchanged for $3.25 cash . . . .

. . . .

4.5 *Surrender of Certificates.* After the Effective Date of the Merger, each certificate which evidenced ownership of a share or shares of the capital stock of either GUG or USL converted by virtue of the Merger into cash (an " 'Old Certificate' "), shall be surrendered by the holder thereof to O'Hare International Bank, Chicago, Illinois (the " 'Disbursing Agent' "), or such other disbursing agent as shall be designated by the Board of Directors of the Surviving Corporation, as agent for such holders, to effect the surrender of certificates on their behalf, and each such holder shall upon such sur-

render receive in exchange therefor the amount to which he is entitled under Section 4.3 as a result of the conversion of the shares of the capital stock of either GUG or USL, as the case may be, into cash. Adoption of this Agreement by the respective stockholders of GUG and USL shall constitute ratification of the appointment of the Disbursing Agent. After the Effective Date of the Merger, the shares of Common Stock of GUG and USL outstanding immediately prior thereto shall cease to be shares of stock of such corporations regardless of whether or not surrendered and the stock transfer books of GUG and USL, shall be closed and there shall be no further transfer or issuance of certificates for the capital stock thereof; provided, however, that a new certificate will be issued in place of any certificate theretofore issued which has been lost or destroyed in accordance with the By–laws of GUG and USL, as the case may be.

Notice of a meeting was given to GUG stockholders. The notice stated that one of the purposes of the meeting was

[t]o consider and vote upon the approval and adoption of an Agreement of Merger dated as of April 20, 1973, pursuant to which GUG will be merged into All American Delaware Corporation ("The New Corporation"), a wholly–owned subsidiary of All American Life and Casualty Company ("All American"). As a result, GUG will become a wholly–owned subsidiary of All American and the holders of Common Stock of GUG other than All American will receive $3.25 in cash in payment for each outstanding share of Common Stock of GUG, all as more fully set forth is the accompanying Proxy Statement and in the copy of the Agreement of Merger attached as Exhibit A to the Proxy Statement.

A proxy statement sent to the stockholders included the following:

The affirmative vote of shares representing at least two–thirds of the Common and Class B Common Stock entitled to vote at the meeting, voting as one class, in person or by proxy, is required to approve the Merger Agreement.

At the time, Iowa had a statute in effect which applied to the merger, section 496A.74, The Code 1973 (references are to that Code). The relevant portion is this:

One or more foreign corporations and one or more domestic corporations may be merged or consolidated in the following manner, if such merger or consolidation is permitted by the laws of the state under which each such foreign corporation is organized:

1. Each domestic corporation shall comply with the provisions of this chapter with respect to the merger or consolidation, as the case may be, of domestic corporations and each foreign corporation shall comply with the applicable provisions of the laws of the state under which it is organized.

Under the statute just quoted, section 496A.70 on mergers thus came into play. The pertinent parts of that section provide:

The board of directors of each corporation, upon approving such plan of merger or plan of consolidation, shall, by resolution, direct that the plan be submitted to a vote at a meeting of shareholders, which may be either an annual or a special meeting . . . .

At each such meeting, a vote of the shareholders shall be taken on the proposed plan of merger or consolidation. Each outstanding share of each such corporation shall be entitled to vote on the proposed plan of merger or consolidation, whether or not such share has voting rights under the provisions of the articles of incorporation of such corporation. The plan of merger or consolidation shall be approved upon receiving the affirmative vote of the holders of at least two–thirds of the outstanding shares of each such corporation, unless any class of shares of any such corporation is entitled to vote as a class thereon, in which event, as to such corporation, the plan of merger or consolidation shall be approved upon receiving the affirmative vote of the holders of at least two–thirds of the outstanding

shares of each class of shares entitled to vote as a class thereon and of the total outstanding shares. Any class of shares of any such corporation shall be entitled to vote as a class if the plan of merger or consolidation, as the case may be, contains any provision which, if contained in a proposed amendment to articles of incorporation, would entitle such class of shares to vote as a class.

The reference in this section to a merger containing a provision which, as an amendment to articles, would require class voting also necessitates consideration of portions of section 496A.57 on amendments:

The holders of the outstanding shares of a class shall be entitled to vote as a class upon a proposed amendment, whether or not entitled to vote thereon by the provisions of the articles of incorporation, if the amendment would:

1. Increase or decrease the aggregate number of authorized shares of such class.

. . . .

3. Effect an exchange, reclassification, or cancellation of all or part of the shares of such class.

At the GUG stockholders' meeting called to consider the merger, the stockholders in control required all classes of stock to vote together on the question. As a result, the merger proposal carried by more than the requisite two–thirds vote of all outstanding stock. Actually, however, the proposal did not carry by two–thirds vote of the outstanding common stock, if that stock is tallied separately.

William F. Shidler and other owners of common stock commenced an action in federal court for themselves and others challenging the merger on several grounds. One of the grounds alleged was noncompliance with sections 496A.70 and 496A.57 for failure to have the GUG common stock vote separately as a class. The United States District Court for the Southern District of Iowa, Central Division, stating that "it appears there is no controlling precedent [of] the Supreme Court of the State of Iowa," certified the following question of law to us:

Did Iowa law require that the General United Group, Incorporated (GUG) merger into All American Delaware Corporation in May of 1973 be approved by

(a) an affirmative vote of the holders of at least two–thirds (⅔) of the outstanding GUG Common Stock shares voting separately as a class and by at least two–thirds (⅔) of the total outstanding GUG shares; or

(b) an affirmative vote of the holders of at least two–thirds (⅔) of the total outstanding GUG shares (of all classes) voting together as one class?

We called for briefs and oral arguments by the parties, which they provided us. We now answer the certified question.

I. The facts are not in dispute; the controversy relates to construction of corporate merger provisions of chapter 496A of the Iowa Code.

■ When we construe a statute, we must look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it . . . .

We also must ascertain and give effect to the intention of the legislature.

*Chicago & Northwestern Railway v. City of Osage*, 176 N.W.2d 788, 792 (Iowa 1970). Also when construing a statute, "We consider all its parts together without according undue importance to single or isolated portions." *Osborne v. Edison*, 211 N.W.2d 696, 697 (Iowa 1973).

While this court has not previously passed upon the legal problem now presented, it has considered the corporate merger setting. *Rath v. Rath Packing Co.*, 257 Iowa 1277, 136 N.W.2d 410 (1965). Intervening legislation has changed the specific issue involved in that case, but this court's general view on the merger sections is reflected by that decision. The court quickly looked through the form of the transaction to its substance and granted the stockholders in

question their entitlements under the merger statutes. In the light of *Rath* and the provisions of the applicable statutes, we proceed to the present case.

II. GUG, the domestic corporation, had three classes of stock, preferred, common and class B common. All of Casualty's shares in GUG would be cancelled, and paragraph 4.3(a) of the merger plan stated that each share of the public GUG common stock would, "by virtue of the Merger and without any action on the part of the holder thereof, be converted into and exchanged for $3.25 cash . . . ." Paragraph 4.5 stated that the public common certificates "shall be surrendered by the holder thereof" to the disbursing agent for cash. The paragraph also stated:

> After the Effective Date of the Merger, the shares of Common Stock of GUG and USL outstanding immediately prior thereto shall cease to be shares of stock of such corporations regardless of whether or not surrendered and the stock transfer books of GUG and USL, shall be closed and there shall be no further transfer or issuance of certificates for the capital stock thereof . . . .

Section 496A.70 provides in part that if a class of stock is entitled to vote on a merger, "the plan of merger . . . shall be approved upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares of each class of shares entitled to vote as a class thereon and of the total outstanding shares." It then provides:

> Any class of shares of any such corporation shall be entitled to vote as a class if the plan of merger or consolidation, as the case may be, contains any provision which, if contained in a proposed amendment to articles of incorporation, would entitle such class of shares to vote as a class.

This merger proposal carried by two-thirds of all GUG shares but not by two-thirds of the common stock. Was the common stock entitled to be voted as a class?

Plaintiffs argue that several clauses in section 496A.57 entitled the common to

be voted separately. We go no farther than paragraph 3 of that section and specifically to the word "cancellation." Suppose that no merger had been proposed, but an amendment to the articles had been submitted which required that all certificates of GUG common shares be surrendered to a depository for cash, that thereafter the shares of common stock would cease to be stock of the corporation, and that the stock transfer books would be closed. Would not this stock be cancelled in a realistic sense? One day the owner of common stock owns a part of an ongoing enterprise; the next day he does not, he instead has money. His shares are recalled and no further trading is permitted in them; the books are closed. To "cancel" means to "revoke, annul, invalidate." *Webster's Third New International Dictionary* 325 (1969). Other definitions are, "To revoke or recall; to annul or destroy, make void or invalid, or set aside. To rescind; abandon; repeal; surrender; waive; terminate." *Black's Law Dictionary* 186 (5th ed. 1979). *See also Knickerbocker Importation Co. v. State Board of Assessors*, 74 N.J.L. 583, 590, 65 A. 913, 915 (1907).

The *Rath* decision enjoins us to look at the merger statutes realistically. We think in the first place that if these common shares had been called in for cash by amendment to the articles without a merger, they would have been entitled to be voted as a class under section 496A.57(3). That this stock would be entitled to be voted if its characteristics are altered, but not if it is completely extinguished for cash, does not appear reasonable. Section 496A.57 does not say the cancellation must be "without consideration."

Section 496A.70 provides in the second place that a class of stock is entitled to vote separately if the plan of merger "contains any provision which, if contained in a proposed amendment to articles of incorporation, would entitle such class of shares to vote as a class." We thus conclude that together these section entitled this common stock to be voted separately as a class.

III. Defendants voice several arguments contrary to this construction of the statutes. One is that this was a "cash out" merger. They say the common stock was not changed or reduced; it was eliminated and money was substituted. But we find nothing in sections 496A.70 and 496A.57 which differentiates cash out mergers from other varieties. Indeed, the cash out merger is drastic: the stockholder is compelled to give up his stock altogether and separate himself from the ongoing organization; he is ejected. Did not the General Assembly intend that such a class of stock should be entitled to vote separately on its fate?

Defendants further contend that if the General Assembly had intended each class of stock to have separate voting rights on mergers, it could have easily so provided as some states have done. But the Assembly did not desire to give each class separate voting rights automatically. It desired to give a class separate voting rights if that stock was affected in ways designated in section 496A.57, one of which is cancellation.

Then defendants urge that the merger plan does not use the word "cancel" or "cancellation" regarding this stock, and they say section 496A.57 does not apply unless the merger plan contains a provision "identical" to one of those in the section. We think this argument flies in the face of the *Rath* rationale of realism. The substance, not the precise words, controls. A merger draftsman cannot avoid section 496A.57 by calling an actual cancellation something else.

Defendants also insist that under section 496A.76 the assets of GUG could have been sold, the proceeds could have been distributed, and GUG could have been dissolved without a separate class vote; the holders of common stock would then have no stock, but money instead. Why then, defendants ask, may not substantially the same thing be done by merger?

■ We may assume arguendo that a separate class vote would not be required in such a proceeding, and we lay aside the point that a sale, distribution, and dissolution normally have substantially different consequences than a merger. But the controlling point is that for reasons it found sufficient, the General Assembly made the requirements of section 496A.70 on merger and of section 496A.76 on sale of assets materially different. We may not make the sections identical by judicial legislation. *Richards v. City of Muscatine*, 237 N.W.2d 48, 58 (Iowa 1975).

We do not find defendants' arguments against the applicability of section 496A.57(3) to be convincing.

IV. As a separate argument, defendants contend that a section of chapter 496A and a clause of GUG's articles, read together, prohibit class voting of the common stock. Section 496A.138 provided at the time of the attempted merger:

Whenever, with respect to any action to be taken by the shareholders of a corporation, the articles of incorporation require the vote or concurrence of the holders of a greater or lesser proportion of the shares, or of any class or series thereof, than required by this chapter with respect to such action, the provisions of the articles of incorporation shall control.

(The words "or lesser" were deleted by 1978 Sess., 67 G.A., ch. 1186, § 3.)

GUG's articles stated at the time:

The holders of the Common Stock and Class B Common Stock shall be entitled at all times to one vote per share and the holders of all classes of common stock of the corporation shall vote together as one class on all matters.

We may assume for the purpose of answering the certified question that during the period section 496A.138 contained the words "or lesser," a clause in corporate articles could lawfully have reduced the two-thirds vote requirement of section 496A.70 to a lesser proportion. The difficulty with defendants' argument, however, is that the quoted portion of the articles on which defendants rely does not deal with the proportion; it does not purport to lessen the two-thirds requirement.

■ The quoted portion of the articles does however purport to prohibit class voting as between common and class B common. This clause was undoubtedly inserted to give control to Casualty. But the articles cannot override the statutes. 18 Am. Jur.2d *Corporations* § 83, at 624 (1965); 18 C.J.S. *Corporations* § 43, at 423 (1939). *See also Ontjes v. Bagley*, 217 Iowa 1200, 1203, 250 N.W. 17, 19 (1933). Section 496A.138 deals with proportions, not class voting. Its words, "or of any class or series thereof," do not authorize a prohibition of class voting. Rather, they constitute an adjective phrase modifying "shares," and "shares" is in an adjective clause modifying "proportion." On the other hand, section 496A.70 provides that any class of shares "shall" be entitled to vote as a class if the merger contains a provision which, as an amendment to articles, would entitle the class to vote separately; and section 496A.57(3) entitles a class to vote separately upon an amendment to cancel shares, "whether or not entitled to vote thereon by the provisions of the articles of incorporation . . . ."

We are not persuaded by defendants' argument.

V. Finally, defendants urge plaintiffs' claim that the common was entitled to vote as a class is really academic for two reasons. One is that Casualty could have converted its other GUG stock to common and thus obtained a two–thirds affirmative vote by the common on the merger. The other is that under section 496A.138, Casualty could have changed the articles to reduce the two–thirds requirement in section 496A.70 to a lesser proportion and thus carried the merger election.

■ We lay aside the fact that a conversion of Casualty's other shares to common shares would have involved several other considerations, and that a change in the articles to reduce the two–thirds requirement would today run into the 1978 repeal of the words "or lesser" in section 496A.138. The significant point is that when the vote on the merger actually occurred in May 1973, Casualty had not in fact converted its other stock or reduced the two–thirds re-

quirement. We deal with the election as it occurred, not as it might have occurred. Many corporations have various classes or series of shares which have rights of conversion into other shares. Corporate elections under chapter 496A cannot stand or fall on what would have happened if certain hypothetical conversions had previously taken place or if changes in the articles had previously been made; they must stand or fall on what in fact took place. We do not find merit in defendants' final argument.

We thus answer the question propounded as follows:

The Iowa law required that the General United Group, Incorporated (GUG) merger into All American Delaware Corporation in May of 1973 be approved by an affirmative vote of at least two–thirds (⅔) of the outstanding GUG Common Stock shares voting separately as a class and by at least two–thirds (⅔) of the total outstanding GUG shares.

The clerk is directed to proceed in accordance with rule 458 of the Rules of Appellate Procedure.

CERTIFIED QUESTION ANSWERED.