William F. SHIDLER, et al., Appellant,

v.

ALL AMERICAN LIFE & FINANCIAL CORP., etc., et al., Appellees.

Nos. 84-2398, 84-2485.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1985.

Decided Oct. 9, 1985.

Rehearing and Rehearing En Banc Denied Nov. 26, 1985.

J. Vernon Patrick, Birmingham, Ala., for appellant.

Aaron J. Kramer, Chicago, Ill., for appellees.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

William F. Shidler and Glen F. Nelson and their wives appeal a final judgment of the district court rejecting their claims against All American Life & Financial Corporation. Appellants' claims arise out of a cash-out merger of shareholders of common stock of the General United Group, Inc. Appellants contend that the merger was accomplished in violation of various Iowa statutes and common law, and federal

securities laws. They seek money damages for wrongful cancellation and conversion of their common shares. At the heart of the controversy is the question whether under Iowa corporations law consent of two-thirds of the common shares is required to effect a cash-out merger.

We conclude that the district court, following a jury trial of some issues and a bench trial of other issues, correctly rejected appellants' claims asserted under section 14(a) of the Securities Exchange Act of 1934 and its appurtenant SEC rule 14a–9. It also properly rejected plaintiffs' claim for breach of contract. We conclude, however, the district court erred in ruling that there is no implied cause of action arising from the Iowa Business Corporation Act and that the Shidlers and Nelsons therefore are barred from recovery on the Iowa state law claims. The district court also erred in rejecting appellants' common law conversion action. We thus affirm in part and reverse in part and remand for a new trial on the state law claims.

In May, 1973, an attempt was made to merge General United Group, Inc. ("GUG"), an Iowa corporation, into All American Delaware Corporation. All American Delaware was a wholly-owned subsidiary of All American Life & Financial Corporation ("All American"), and was created solely for the purposes of this merger. GUG had three classes of stock outstanding, held by each group as follows:

| | All American | Others | Total |
|---|---|---|---|
| Preferred | 105,000 | —— | 105,000 |
| Class B Common | 10,623,150 | —— | 10,623,150 |
| Common | 67,043 | 2,892,517[1] | 2,959,560 |

The Class B and preferred shares were convertible to common stock.[2] Under the

1. There were approximately 12,000 common stock holders.

2. Had All American converted its preferred and Class B to common, it would have held 65.6% of GUG's common shares.

3. The relevant text of Iowa Code Ann. § 496A.70 (West Supp.1985) is as follows:
 [A] vote of the shareholders shall be taken on the proposed plan of merger or consolida-

terms of a merger agreement between GUG and All American Delaware, all holders of GUG stock would be cashed out, their certificates cancelled in exchange for a price determined by the agreement.

Notice of a meeting was given to GUG stockholders. It stated that one of the purposes of the meeting was

[t]o consider and vote upon the approval and adoption of an Agreement of Merger dated as of April 20, 1973, pursuant to which GUG will be merged into All American Delaware Corporation ("The New Corporation"), a wholly-owned subsidiary of All American Life and Casualty Company ("All American"). As a result, GUG will become a wholly-owned subsidiary of All American and the holders of Common Stock of GUG other than All American will receive $3.25 in cash in payment for each outstanding share of Common Stock of GUG, all as more fully set forth in the accompanying Proxy Statement and in the copy of the Agreement of Merger attached as Exhibit A to the Proxy Statement.

The proxy statement sent to the shareholders stated: "The affirmative vote of shares representing at least two-thirds of the Common and Class B Common Stock entitled to vote at the meeting, voting as one class, in person or by proxy, is required to approve the Merger Agreement." This assertion was based on Iowa statutes in effect at the time providing that a plan of merger or consolidation must receive the affirmative vote of the holders of at least two-thirds of the outstanding shares "unless any class of shares of any such corporation is entitled to vote as a class thereon," in which case a two-thirds vote of each class was required.[3]

tion. Each outstanding share of each such corporation shall be entitled to vote on the proposed plan of merger or consolidation, whether or not such share has voting rights under the provisions of the articles of incorporation of such corporation. The plan of merger or consolidation shall be approved upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares of each such corporation, unless

At the GUG stockholders' meeting called to consider the merger, the stockholders in control required all classes of stock to vote together on the question. The merger proposal carried more than two-thirds of all outstanding stock. However, the proposal did not carry two-thirds of the outstanding common stock. Rather, it garnered the consent of only about 41.8% of the common stock. Virtually all the shareholders, but not the plaintiffs, subsequently surrendered their shares for cash.

The plaintiffs filed suit in April 1975, alleging that the merger was conducted in violation of the federal securities laws as well as state statutory and common law. Six claims were raised: (1) violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1984) and SEC rule 10b–5, 17 C.F.R. § 240.106–5 (1984), promulgated thereunder; (2) violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (1984) and SEC rule 14a–9, 17 C.F.R. § 240.14a–9 (1984), promulgated thereunder; (3) violation of the Iowa Business Corporation Act, Iowa Code Ann. §§ 496A.1–.144 (West 1962 & Supp.1985); (4) common law breach of fiduciary duty; (5) common law conversion; and (6) violation of state statutes concerning insurance holding companies, Iowa Code Ann. §§ 521A.1–.13 (West Supp.1985).

Before trial, the district court certified to the Iowa Supreme Court the question whether under Iowa law section 496A.70 permitted one-class voting on the merger. A three-week jury trial ensued on all other claims. Defendants' verdicts were rendered on all counts. Thereafter, the Iowa Supreme Court ruled that section 496A.70 did in fact require separate class voting. *Shidler v. All American Life & Financial Corp.*, 298 N.W.2d 318 (Iowa 1980). The district court then held a bench trial to determine whether in light of the state court decision defendants were liable under state law. It concluded that they were not. The district court then certified to the Iowa Supreme Court the question whether the plaintiffs could maintain a private action for damages under section 496A.70. The state court declined to answer the question certified. The district court then entered judgment for the defendants on all claims. This appeal followed.

## I.

■ We first consider whether a violation of the Iowa merger statute will support a private cause of action for damages. We recognize that on questions of state law great weight is to be accorded the decisions of experienced district court judges. *Freeman v. Schmidt Real Estate & Ins., Inc.*, 755 F.2d 135, 137 (8th Cir. 1985); *Melia v. Ford Motor Corp.*, 534 F.2d 795, 799 (8th Cir.1976). However, we are not bound by a district court's interpretation of state law, and must reverse when our reading so compels. *Kansas State Bank v. Citizens Bank*, 737 F.2d 1490, 1496 (en banc) (8th Cir.1984); *Luke v. American Family Mut. Ins. Co.*, 476 F.2d 1015, 1019 (8th Cir.1972), *aff'd on rehearing en banc*, 476 F.2d 1023, *cert. denied*,

---

any class of shares of any such corporation is entitled to vote as a class thereon, in which event, as to such corporation, the plan of merger or consolidation shall be approved upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares of each class of shares entitled to vote as a class of shares thereon and of the total outstanding shares. Any class of shares of any such corporation shall be entitled to vote as a class if the plan of merger or consolidation, as the case may be, contains any provision which, if contained in a proposed amendment to articles of incorporation, would entitle such class of shares to vote as a class.

The statute on class voting, Iowa Code Ann. § 496A.57 (West Supp.1985), provides:

The holders of the outstanding shares of a class shall be entitled to vote as a class upon a proposed amendment, whether or not entitled to vote thereon by the provision of the articles of incorporation, if the amendment would:

1. Increase or decrease the aggregate number of authorized shares of such class.

\* \* \* \* \* \*

3. Effect an exchange, reclassification, or cancellation of all or part of the shares of such class.

414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973). We must do so here.

▮ The parties agree that the relevant standard to determine whether a private cause of action should be judicially implied from a statute that does not expressly authorize private suits is set forth in *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35 (Iowa 1982) (relying on *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Four factors are analyzed to ascertain whether the legislature intended that a private right of action be implied. We will address each factor in turn.

### A.

*Are the plaintiffs members of the class for whose special benefit the statute was enacted?* The district court concluded that plaintiffs are members of the class for whose special benefit the statute was enacted. Plaintiffs are minority shareholders. We can determine whether a special benefit to minority shareholders is contemplated by the statute by examining the effect of the procedures the statute creates. It is clear that the merger statute as a whole was enacted for the benefit of the corporation and its controlling shareholders. Its procedures assure that corporate control is not lightly passed. However, the two-thirds and class voting requirements undoubtedly were implemented to protect the minority shareholders. The class voting requirement has the effect of granting to any single class of shareholders, often constituting less than the majority of all the shareholders, the power to block a merger. *See Cosson*, Iowa Business Corporations Act, 28A Iowa Code Ann. 1, 33 nn. 136–39 (1962) (among the provisions tending to protect minority shareholders from majority shareholders is class voting). Similarly, it is abundantly clear that a two-thirds voting requirement increases the influence of minority shareholders, enabling them to protect their interests against those of the majority shareholders. We therefore conclude, as did the district court, that plaintiffs, minority shareholders de-

nied their right to have their shares voted as a class, are members of the class of persons for whose special benefit section 496A.70 was enacted.

### B.

*Is a private cause of action consistent with the underlying purpose of the Iowa Business Corporation Act?* The district court opined that the Act "is more procedurally oriented than it is remedially oriented. * * * The Act defines the relationships between shareholders, directors and management with considerable precision but does not create any civil causes of action explicitly."[4] Thus, the court concluded that to allow a private cause of action would be inconsistent with the purpose of the Act.

Nowhere in the Act is an underlying purpose expressly articulated. Nor can a particular purpose be divined from the scant legislative history. Since, unlike the district court, we cannot determine with certainty the underlying purpose of the Act, we cannot conclude that implying a private cause of action is inconsistent with the purpose of the statute. Our inability to discern a specific central purpose, however, does not preclude our finding an implied private right of action. As the Supreme Court stated:

> [T]he legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations * * * "in which it is clear that [the statute] has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling."

*Cannon v. University of Chicago*, 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979) (quoting *Cort v. Ash*, 422 U.S. at 82, 95 S.Ct. at 2090 (emphasis in original)). We conclude, therefore, that this factor

---

**4.** This conclusion, regarding civil causes of action, is erroneous. *See* subsection C *infra.*

does not negate the propriety of our finding an implied cause of action.

## C.

*Will the implication of a private cause of action intrude into an area over which the federal government has exclusive jurisdiction or to which a state administrative agency has been delegated exclusive authority?* None of the parties argues that a private cause of action will impinge upon federal jurisdiction in this area. As to whether such an implication would impinge on the jurisdiction of an administrative agency, it is clear from examination of the Act's various provisions that enforcement responsibility has not been delegated exclusively to the Iowa secretary of state. For example, section 496A.4 of the Act provides for indemnification by the corporation of officers and directors for expenses they may incur in connection with the defense of any action, whether "civil, criminal, administrative or investigative." Iowa Code Ann. § 496A.4 (West Supp. 1985). In addition, section 496A.44 of the Act imposes civil liability on directors and officers of the corporation in "certain cases." Iowa Code Ann. § 496A.44 (West Supp.1985). Similarly, provision is made for civil actions by shareholders unreasonably denied access to corporate records. Iowa Code Ann. § 496A.47 (West Supp. 1985). Thus, the very language of the Act demonstrates an expectation of enforcement through a variety of legal channels. Judicial implication of a private cause of action, therefore, poses no threat to federal sovereignty or administrative autonomy.

## D.

*Did the legislature intend either to permit or bar a private remedy?* The district court found no evidence that the legislature intended affirmatively to permit or bar a private action under the merger statute. The defendants contend, however, that there is evidence from which we may conclude that the legislature did intend to bar the private remedy.

■ The defendants argue first that statutory appraisal, Iowa Code Ann. §§ 496A.78–.79 (West 1962 & Supp.1985), is the sole relief intended by the legislature for disappointed minority shareholders. However, the statute provides for appraisal as the exclusive remedy only where "the proposed corporate transaction [is] approved by the required vote." *Id.* § 496A.78; *cf. Ziskin v. Thrall Car Manufacturing Co.*, 106 Ill.App.3d 482, 485, 62 Ill.Dec. 255, 258, 435 N.E.2d 1227, 1230 (1982) ("[T]he Iowa act establishes appraisal as the exclusive remedy against a *proper* corporate merger." (emphasis added)). If the transaction is unlawful, appraisal cannot be the exclusive remedy. *See* Vorenburg, *Exclusiveness of the Dissenting Stockholder's Appraisal Right*, 77 Harv.L. Rev. 1189, 1209–10 (1964); *cf. DuVall v. Moore*, 276 F.Supp. 674, 688 (N.D.Iowa 1967) (stockholders wrongfully denied voting rights had no claim to appraisal because underlying corporate resolution was invalidly approved). Defendant's position would encourage the corporation to disregard procedural statutes, since dissenting shareholders would be entitled only to the remedy of appraisal regardless of the corporation's conduct:

> Clearly the purpose of the dissenters' rights clause of the statute is to enable the majority to act unthwarted by a stubborn, recalcitrant minority or a calculating "striker." * * * On the other hand, if the statute limits the shareholder to a recovery of the value of his shares where fraud or illegality is involved, it would appear to condone wrongdoing and to make the wrong unassailable by an injured party.[5]

*See* Note, *Merger and Consolidation in Iowa*, 34 Iowa L.Rev. 67, 79 (1948).

The defendants also argue that the "elaborate administrative enforcement scheme" in the Act is "adequate to achieve

---

**5.** In *Linge v. Ralston Purina Co.*, 293 N.W.2d 191 (Iowa 1980), the Iowa Supreme Court assumed, without deciding, that the appraisal remedy was not exclusive. The court cited the articles relied upon in the text, both of which reject the exclusivity argument in this context. *Id.* at 198.

the Act's purposes, suggesting that the legislature intended it to be exclusive." Appellee's Brief at 29; *see Seeman,* 322 N.W.2d at 41–42. General enforcement provisions in the Act give the secretary of state broad powers of administration. *See* Iowa Code Ann. §§ 496A.131–.135 (West 1962 & Supp.1985). These sections, however, offer nothing to support the claim of exclusivity. On the other hand, they clearly do not purport to exclude other remedies.

The role of the secretary of state in the accomplishment of mergers or consolidations under section 496A.71 is similarly largely administrative.[6] While this provision must be read in conjunction with the sections granting general powers of the secretary to act on articles of incorporation, *see* Iowa Code Ann. § 491.107 (West 1949); *id.* § 496A.71 comment (West 1962); *Id.* §§ 491.6–.9 (West 1949), they essentially provide only that the secretary may refuse to file the articles if he is not satisfied that they are lawful. They do not suggest that the secretary of state play the kind of enforcement role that would indicate a legislative intent to preclude all private enforcement of the Act.

These provisions thus do not expressly provide the exclusive remedy for defects relating to merger articles. Nor can such a conclusion be implied. Indeed, these procedures are far too limited to support an implication that minority shareholders must rely on them without more. First, minority shareholders are not explicitly given the right to be heard by the secretary. Second, should a decision be made to file the articles, the procedure offers the shareholders no recourse; only the failure to approve is subject to appeal and judicial review. Iowa Code Ann. § 496A.135 (West 1962).[7] Finally, the relatively narrow form of scrutiny exercised by the secretary does not justify subordinating the minority voice to the secretary's discretion. As the Iowa Supreme Court stated in *Berger v. Amana Society,* 250 Iowa 1060, 95 N.W.2d 909 (1959), in which corporate directors and officers argued that shareholders were precluded by the secretary of state's enforcement power from challenging an amendment to the articles of incorporation which provided for the issuance of additional stock:

> [I]t is no part of the duty of the Secretary of State to concern himself with the conflicting rights of stockholders, at least those which do not appear on the face of the articles. His duties are defined by [Iowa Code Ann. § ] 496.6. He must satisfy himself that the articles are in proper form, that their object is a lawful one and not against public policy, and the plan for doing business is honest and lawful. * * *

*Id.* at 1072, 95 N.W.2d at 916.

Defendants also invoke the maxim "expressio unius est exclusio alterius" (men-

---

**6.** Iowa Code Ann. 496A.71 (West 1962) provides:
 Upon such approval [by the shareholders], articles of merger or articles of consolidation shall be executed by each corporation by its president or a vice-president and by its secretary or an assistant secretary, and acknowledged by one of the officers of each corporation signing such articles, and shall set forth:
 1. The plan of merger or the plan of consolidation.
 2. As to each corporation, the number of shares outstanding, and, if the shares of any class are entitled to vote as a class, the designation and number of outstanding shares of each such class.
 3. As to each corporation, the number of shares voted for and against such plan, respectively, and, if the shares of any class are entitled to vote as a class, the number of shares of each such class voted for and against such plan, respectively.

 The articles of merger or articles of consolidation shall be delivered to the secretary of state for filing and recording in his office, and the same shall be filed and recorded in the office of the county recorder.
 The secretary of state upon the filing of the articles of merger or articles of consolidation shall issue a certificate of merger or a certificate of consolidation and send the same to the surviving or new corporations as the case may be, or to its representative.

**7.** After approval of the articles in this case, this section was amended to allow judicial review of the secretary's actions under the Iowa Administrative Procedure Act. Iowa Code Ann. § 496A.135 (West Supp.1985). Whatever the impact of this amendment, it sheds no light on whether the legislature intended a private right to action when it adopted section 496A.70.

tion of one thing implies exclusion of another). They argue that application of the maxim yields the conclusion that expression of administrative powers implies exclusion of private remedies. Applying this principle of statutory construction, however, is not determinative. The Iowa legislature could have expressly forbidden judicial implication of private rights as it has done with the state securities laws, *e.g.*, Iowa Code Ann. § 502.505 (West Supp. 1985) ("Except as explicitly provided in this chapter [Blue Sky law], no civil liability in favor of any person shall arise against any person by implication from or as a result of the violation of any provision of this chapter or any rule or order hereunder"), yet did not. And, as the Supreme Court has observed:

> The fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section. Rather, the court has avoided this type of "excursion into extrapolation of legislative intent," unless there is other, more convincing evidence that [the legislature] meant to exclude the remedy.

*Cannon v. University of Chicago*, 441 U.S. at 711, 99 S.Ct. at 1965; *see Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548 (1983). We conclude, therefore, that section 496A.71 does not evince a legislative intent to exclude a private right of action. As one commentator has observed:

> It seems improbable that the Iowa legislature intended to rely solely upon administrative review by the secretary of state to protect a shareholder whose interest in a corporation is being jeopardized by illegal or fraudulent methods of the controlling group, and to foreclose recourse to the equitable powers of the courts in such a situation.

*See* Note, *supra* at 79.

■ Based on these factors, we believe that the Iowa Supreme Court would allow an implied right of action for damages under 496A.70.[8] The Act vests minority shareholders with important rights incident to their stock ownership. The facts of this case show that the limited administrative enforcement scheme is inadequate to enforce the rights necessary to protect these shareholders. A private right of action for damages is necessary to make injured shareholders whole and to discourage future unlawful conduct in freeze-out mergers. *See Seeman*, 322 N.W.2d at 35 ("An action for money damages provides an injured party with a meaningful incentive to seek enforcement of the [law's] prohibitions and also provides a meaningful deterrent against future violations."); *see also J.I. Case Co. v. Borak*, 377 U.S. 426, 433–34, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964) (implying private right of action under section 14(a) of the Federal Securities Exchange Act of 1934).[9] Therefore, the

---

**8.** We also are moved to this conclusion by the fact that various other Iowa corporation laws have figured prominently in several private actions for damages or equitable relief. *See, e.g., First Nat'l Bank of Council Bluffs v. One Craig Place, Ltd.*, 303 N.W.2d 688, 695 (Iowa 1981); *Rath v. Rath Packing Co.*, 257 Iowa 1277, 1286–89, 136 N.W.2d 410, 415–17 (1965); *Berger v. Amana Soc'y*, 250 Iowa 1060, 1066–69, 95 N.W.2d 909, 913–14 (1959); *see also Watts v. Des Moines Register & Tribune*, 525 F.Supp. 1311, 1320–23 (S.D.Iowa 1981) (applying Iowa law); *DuVall v. Moore*, 276 F.Supp. 674, 680, 682–83 (N.D.Iowa 1967) (same).

In *Linge v. Ralston Purina Co.*, 293 N.W.2d 191 (Iowa 1980), the plaintiffs argued for recognition of a private right of action under Iowa Code Ann. § 496A.78 (1962). The court left the question open:

> We will assume, without deciding, that defendants did violate section 496A.78 * * *. Because *this case was tried on a theory of fraud,* it would not be enough for plaintiffs merely to prove the violations. * * * The trial court's holding that the short-term merger proceedings were not fraudulent means that any violations of section 496A.78 do not constitute a basis for recovery *in this case.*

*Id.* at 198 (emphasis added).

**9.** The defendants argue that the Iowa Supreme Court's refusal to answer this issue upon certification implies that the court agreed with the defendants' contention that no cause of action should be implied. This assertion is without merit. A court may decline to answer a certified question for a variety of reasons. It may find that the form of the question is deficient,

conclusion of the district court to the contrary is error.

## II.

The plaintiffs contend that GUG converted their shares by unlawfully using the one-class voting scheme to extinguish their rights. Iowa law defines conversion as the wrongful taking of control or dominion over property in derogation of another's possessory rights. *Merchants & Farmers State Bank v. Rosdail*, 257 Iowa 1238, 1246, 131 N.W.2d 786, 790 (1964); *Welke v. City of Davenport*, 309 N.W.2d 450, 451 (Iowa 1981).

After the bench trial following the Iowa Supreme Court's decision on class voting, the district court rejected the conversion claim on two grounds. The court stated that the plaintiffs did not "deny that the defendants had a right to merge and force them to sell their stock." The court also found a lack of causation, reasoning that the defendants held enough shares to assure the proper adoption of the merger. After post-trial motions, the court reiterated its conclusion that conversion did not lie because GUG acted wrongfully only in the manner in which it took possession of the plaintiff's shares, rather than in its claim of a right of possession.

On appeal, the parties primarily pose two questions. The first concerns the nature of the defendants' right to effect the merger and take the plaintiff's shares. The defendants argue that the class-voting defect was merely a "technical flaw" that is unrelated to the defendant's right to take possession. Plaintiffs respond that the right to merge is conditional and arises only upon compliance with state law.

 The common law required the unanimous consent of all shareholders to effect a merger. *Rath v. Rath Packing*

Co., 257 Iowa 1277, 1287, 136 N.W.2d 410, 415 (1965). Iowa statutes now authorize mergers upon a vote of less than all the stockholders. Iowa Code Ann. § 496A.70 (West Supp.1985). Compliance with these statutes is a condition precedent to a valid merger:

> The power of a corporation to merge must be derived from the law of the state which created it. There must be some plain enactment authorizing the merger, for legislative authority is just as essential to a merger as to creation of the corporation in the first instance. Legislative authority for a merger will not be implied but must be clearly, distinctly and expressly conferred.

*Rath*, 257 Iowa at 1286, 136 N.W.2d at 415 (citations omitted). We are convinced that the right to merge is conditional. Failure to comply with the statute authorizing the transaction leaves the corporation without a common law or statutory right to merge absent consent of all the shareholders.

 It is undisputed that GUG contravened Iowa merger law. Thus, it had no right to effectively cancel the plaintiff's shares. *See* 4 W. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1969, at 697 (C. Keating Rev.1985) ("If a corporation sells or forfeits shares when it has no power to do so or without complying with charter or statutory requirements, or otherwise wrongfully, the shareholder * * * may treat the forfeiture or sale as a conversion * * *."). We reject the defendant's characterization of its failure to follow the statutory prescriptions as a mere "technical flaw." The single-class voting procedure deprived minority shareholders of their basic property right to a meaningful voice in the conduct of corporate affairs. *DuVall v. Moore*, 276 F.Supp. at 679.[10] Thus, plaintiffs may

---

that its resolution is unnecessary, or that the issue should be allowed to percolate through the lower courts. Note, *The Uniform Certification of Questions of Law Act*, 55 Iowa L.Rev. 465, 473 (1969). Thus, refusal imports no substantive meaning. *Cf. Brown v. Allen*, 344 U.S. 443, 489–97, 73 S.Ct. 397, 437–41, 97 L.Ed. 469 (1953)

(denial of certiorari by United States Supreme Court does not indicate any view of the merits).

**10.** The defendants do not deny that the defendants had the intent to exercise dominion over the plaintiff's shares. This intent is sufficient to support conversion liability. *See Restatement (Second) of Torts* § 224 comment c (1965).

treat this deprivation as an injury sounding in the tort of conversion.

The second dispute concerns causation. The defendants argue that the merger could have been properly effected through alternate approval procedures. The district court found this assertion to be true, and concluded that "any damages suffered by plaintiffs would not be fairly attributable to the merger."

The defendants raised this argument before the Iowa Supreme Court. They contended essentially that any statutory violation was harmless error because several lawful methods could have been used to effect the merger.[11] The court rejected this contention:

> We deal with the election as it occurred, not as it might have occurred. * * * Corporate elections under chapter 496A cannot stand or fall on what would have happened if certain hypothetical conversions had previously taken place or if changes in the articles had previously been made; they must stand or fall on what in fact took place.

298 N.W.2d at 324. We believe that the Iowa Supreme Court similarly would reject the defendants' argument in the context of the state law claim of conversion. Based on this reasoning, we conclude that the district court erred in rejecting the plaintiffs' conversion claim.

## III.

Plaintiffs object to the district court's rulings on the proxy claims under section 14(a) of the Securities Exchange Act of 1934. They argue that section 14(a) imposes strict liability on corporate issuers for misstatements or omissions in proxy statements. Under this view, since the defendants placed in the proxy statement the assertion that two-thirds of all shares voting together were required for approval of the merger, a misstatement in light of the Iowa Supreme Court ruling, they stand in violation of section 14(a). We cannot accept this assertion.

Section 14(a) offers no explicit standard of liability. Moreover, precedents are scarce.[12] Nonetheless, circuit courts that have faced the issue are in agreement that strict liability is not the appropriate standard of liability under the statute and its appurtenant SEC rule 14a–9. See, e.g., Adams v. Standard Knitting Mills, Inc., 623 F.2d 422, 428 (6th Cir.) (en banc) (scienter standard applies as to outside accountants), cert. denied, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980); Gould v. American Hawaiian S.S. Co., 535 F.2d 761, 776–77 (3d Cir.1976) (negligence standard applies to outside nonmanagement directors); Gruss v. Curtis Publishing Co., 534 F.2d 1396, 1403 (2d Cir.) (negligence is the standard of liability for corporate issuers under rule 14a–9), cert. denied, 429 U.S. 887, 97 S.Ct. 240, 50 L.Ed.2d 168 (1976). There is

There is some question about GUG's knowledge that its conduct was in violation of the statute. This knowledge is irrelevant to the issue of liability. "A mistake of law or fact is no defense. 'Persons deal with the property in chattels or exercise acts of ownership over them at their peril,' and must take the risk that there is no lawful justification for their acts." W. Keeton, Prosser and Keeton on the Law of Torts § 15 at 93 (5th ed. 1985) (citations omitted); see Towe Farms v. Central Iowa Prod. Credit Ass'n, 528 F.Supp. 500, 506 (S.D.Iowa 1981); Prior v. Rathjen, 199 N.W.2d 327, 332 (Iowa 1972). Nevertheless, the defendant's good faith may be considered in computing damages. See Restatement (Second) of Torts § 222A(2).

11. The defendants contended that the merger could have been completed without class voting if the transaction had been structured as a sale of assets. See Iowa Code Ann. § 496A.76 (West Supp.1985). They also argued that a conversion of All Americans preferred and Class B shares to common would have assured the necessary two-thirds margin and that a change in the articles of incorporation could have lowered the percentage of votes required to approve the merger. Shidler, 298 N.W.2d at 323, 324. The district court agreed with the second argument.

12. The question whether strict liability is the proper standard of liability under § 14(a) was recognized but not resolved by the Supreme Court in TSC Indus. v. Northway, Inc., 426 U.S. 438, 444 n. 7, 96 S.Ct. 2126, 2130 n. 7, 48 L.Ed.2d 757 (1976), and by the Second Circuit in Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1300–01 (2d Cir.1973). See also Loss, Fundamentals of Securities Regulation (1983) 543–44.

good reason for this consonance among the circuits. The purpose of section 14(a) is "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). A strict liability rule would impose liability for fully innocent misstatements. It is too blunt a tool to ferret out the kind of deceptive practices Congress sought to prevent in enacting section 14(a).

To prove that strict liability is the appropriate standard under section 14(a), plaintiffs invite us to draw an analogy to section 11 of the Securities Act of 1933, as amended by the Act of 1934, 15 U.S.C. § 77k (1984). Under section 11, "[l]iability against the issuer of the security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. at 382, 103 S.Ct. at 687 (footnote omitted). Like section 14(a), section 11 concerns civil liability for false or misleading statements or omissions of material fact in a specific document of central concern to securities regulation, in this case the registration statement. Thus it appears that the liability rule of section 11 comfortably fits the goals of section 14(a).

 The analogy to section 11 is not without merit, but it is inexact. Section 11 regulates the issuance of new securities. The investors protected by the mechanism of disclosure under section 11 cannot be expected to be well-informed about the corporation's activities when they make their initial investments. *See Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 563–66 (E.D.N.Y.1971). Little less than a strict liability standard is capable of affording these new investors the necessary protection. Section 14(a), on the other hand, aims to protect current shareholders, investors who are continuing participants in the corporation. *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 448, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1976). As such, these investors can be expected to have available the means to obtain information about the performance of the corporation. It is therefore unnecessary to reach to a strict liability standard to assure for this purpose the fair and adequate dissemination of information.

 On balance, we cannot conclude that the district court erred in declining to accept plaintiffs' contention that strict liability is the standard applicable under section 14(a).[13] The district court found that the defendants were not negligent in issuing the proxy statement. This finding is not clearly erroneous. *See Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1281, 1289 (2d Cir.1973).[14] Because the defendants were not negligent, we need not decide whether the district court erred in failing to reach the question whether the alleged omissions and misrepresentations were material.

### IV.

The plaintiffs raise a number of other issues. First, they argue that under Iowa law a corporation and its shareholders are in the posture of parties to a contract, the terms of which include the articles of incorporation, by-laws, stock certificates, and applicable statutes. *See, e.g., Berger*, 250

---

**13.** This conclusion disposes of the plaintiffs' related argument that the district court improperly instructed the jury regarding the standard of care under section 14(a). It also renders irrelevant the issue whether All American's Iowa attorney demonstrated a culpable state of mind by first challenging the propriety of voting all outstanding shares as one class, then shifting his position, but refusing to give an unqualified opinion after conferring with Chicago counsel.

**14.** We reject plaintiffs argument that the violation of section 496A.70 constituted negligence per se for purposes of determining liability under the federal securities laws. The Iowa Supreme Court's post facto finding does not prove that the defendants were negligent. In fact, a voting provision in a similar merger statute previously had been characterized as ambiguous by a commentator. Note, *supra* at 71 & n. 42 (construing Iowa Code Ann. § 491.105 (West 1949) ).

Iowa at 1068, 95 N.W.2d at 914; *O'Connor v. Home Savings & Loan Ass'n*, 224 Iowa 1127, 1131, 278 N.W. 636, 638 (1938). The district court held that the director defendants had not breached the contract. On appeal, the plaintiffs urge that the court erred in failing to determine whether GUG breached the statutory terms of the contract. We do not reach the merits of this challenge. Because this case will be remanded on other grounds, the district court should reconsider the issue, with particular attention to two points: first, whether the recent decision in *Swanson v. Shockley*, 364 N.W.2d 252 (Iowa 1985), affects the claim; and second, whether relief on this claim would be duplicative of any recovery on the implied right of action recognized above.

Plaintiffs also complain about certain jury instructions. We are satisfied that on retrial, if to a jury, the district court will carefully consider the requested instructions in light of our opinion. We therefore need not further consider these arguments.

Finally, plaintiffs contend that shareholders did not receive adequate notice before the hearing held by the Iowa Insurance Commissioner. We find no error in the district court's ruling on this issue.

■ The defendants raise four major defenses on appeal, including stockholder ratification, lack of causation, lack of damages, and laches. We reject the ratification defense, which is merely a variation of the argument that the defendants should escape all liability because they could have properly executed the merger. For the same reason, the causation defense is meritless. The laches defense was properly rejected by the district court, and any arguments regarding damages may be presented on remand. Finally, we conclude that the district court did not abuse its discretion in refusing to award the plaintiffs attorneys' fees or in charging each party with its own costs. *See J.E.K. Industries v. Shoemaker*, 763 F.2d 348, 353 (8th Cir. 1985); *Robinson v. Monsanto Co.*, 758 F.2d 331, 336 (8th Cir.1985).

The judgment of the district court is affirmed in part and reversed in part and the case is remanded for proceedings consistent with this opinion.