J. C. DOOLEY, Appellee, v. THE GLADIATOR CONSOLIDATED GOLD MINES AND MILLING CO., Appellant.

Corporate stock: CONVERSION. The assignee of corporate stock may elect to treat the wrongful refusal of the corporation to register the transfer as a conversion thereof and recover the full value.

**Same:** EXTENT OF RECOVERY. Where refusal to register a transfer of corporate stock amounts to conversion, the assignee may recover the full value at the time of demand with interest to the date of trial.

**Market value.** The market value of stock, in a suit for conversion, is the price it was selling for on the market at the time of conversion.

**Transfer of stock:** DEMAND: CONVERSION. Where the secretary of a corporation refused to register a transfer of corporate stock when properly presented for that purpose, but referred the assignee thereof to the general manager, who also refused, the demand and refusal amounted to conversion, even though the manager was not at the time in his place of business, to which fact no objection was made.

**Same:** TENDER. After conversion of corporate stock by refusal to register a transfer, a tender of performance during the trial is not a defense to an action for the price.

**New Trial:** EVIDENCE. The fact that an assignee of corporate stock subsequently voted the same is not ground for a new trial, since that fact could not have been shown on the original trial; nor is false swearing in itself ground for new trial.

Evidence of false swearing, if admissible, held insufficient to warrant a new trial on petition.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, NOVEMBER 20, 1906.

REHEARING DENIED, MONDAY, MAY 20, 1907.

ACTION at law to recover the value of certain stock in defendant corporation alleged to have been converted by it. Trial to a jury. Verdict and judgment for plaintiff and defendant appeals. After judgment had been entered, and within a year thereafter, defendant filed a petition for a new trial based upon newly discovered evidence, and an alleged fraud by plaintiff in procuring the judgment. This petition was denied, and from that order defendant also appeals. *Affirmed.*

*Warren Walker* and *Parsons & Evans,* for appellant.

*John Newburn* and *Gillespie & Bannister,* for appellee.

DEEMER, J.—Plaintiff became the owner by purchase from the holders of three thousand five hundred shares of stock in the defendant company which shares were duly assigned to him by the holders thereof. After becoming the owner of said shares he presented the same to the officers of defendant company, and claims that he tendered the regular transfer fee, and demanded the transfer and issuance to him of a like number of shares of stock in the defendant corporation, which demand he says was refused, and he thereupon brought suit against defendant for the conversion of the stock. Defendant denied the material allegations of plaintiff's petition, but admitted that S. G. Hammons was president, W. N. McKay, secretary, and C. H. Crabtree, treasurer and general manager of the corporation. It further alleged that when plaintiff presented his stock to the secretary he stated that he would prefer to have said secretary refuse to make the transfer than to make it. Upon these issues and claims the case was submitted to a jury, resulting in a verdict for plaintiff in the sum of $1,526.58. The first appeal is from the judgment rendered in the main case.

It is contended for appellant that no action at law will lie against a corporation for failure to make a transfer of stock upon its books, and *McLean v. Wright,* 96 Mich., 479

1. CORPORATE STOCK: transfer: conversion.

(56 N. W. 68), is cited as an authority for the proposition. That case apparently so holds. But it is based upon a statute of the State of Michigan that changes the rule which generally prevails. Under that statute a transfer upon the books of the company is not necessary to the validity of the purchaser's title. In that state certificates of stock pass by assignment the same as negotiable paper. That is not the rule in this jurisdiction. *Ottumwa Co. v. Stodghill,* 103 Iowa, 437; *Perkins*

*v. Lyons,* 111 Iowa, 192, and cases cited. The great weight of authority is to the effect that an assignee of stock may, if he so elects, treat the wrongful refusal of a corporation to register the transfer of stock as a conversion thereof, and may sue for the recovery of its value. *Craig v. Land Co.* 113 Cal. 7 (45 Pac. 10, 35 L. R. A. 306, 54 Am. St. Rep. 316); *Bridgeport Bank v. New York, R. R.,* 30 Conn. 231; *Bond v. Mount Hope Co.,* 99 Mass., 505 (97 Am. Dec. 45); *Com. Bank v. Kortright,* 22 Wend. (N. Y.) 348 (34 Am. Dec. 317; *Durham v. Monumental Co.,* 9 Or. 41; *Rio Grande Co. v. Burns,* 82 Tex. 50 (17 S. W. 1043). An assignee may also at his election secure a transfer by action of mandamus. *Hair v. Burnell,* (C. C.) 106 Fed. 280. But he is not obliged to adopt this remedy. We need not quote from the cases cited. Suffice it to say that they fully sustain the rule announced.

II. Further claim is made that as plaintiff failed to show any depreciation in the value of the stock after the making of his demand nothing more than nominal demages

2. SAME: extent of recovery.

may be recovered. If the rule in Michigan be correct, doubtless appellant's contention would be good. But if the refusal to transfer constitutes a conversion plaintiff may recover the full value of his stock at the time demand was made with interest to date of trial. *German Co. v. Sendmeyer,* 50 Pa. 67; *Ralston v. Bank,* 112 Cal. 208 (44 Pac. 476); *Pinkerton v. Manchester Co.,* 42 N. H. 424; *London Bank v. Aronstein,* 117 Fed. 601 (54 C. C. A. 663); *Rio Grande Co. v. Burns,* 82 Tex. 50 (17 S. W. 1043).

III. Several of the instructions are criticised, and complaint is made of the refusal to give certain requests made by defendant. What we have already said disposes

3. MARKET VALUE.

of most of these complaints. The ones undisposed of relate to the request for the transfer of the stock and to the instructions regarding market value. The instruction as to market value given by the

trial court was in exact accord with the one asked by defendant; that is to say, the trial court instructed that the market value was what the stock was selling for in the market at the time the stock was presented for transfer. There was no error here.

Plaintiff presented the stock purchased by him to the secretary of the company, and the testimony tends to show that he tendered the regular fees, and demanded a transfer of the stock. The testimony also shows, or at least the jury was authorized to find, that defendant's office was in a certain building in Des Moines, and that one Crabtree, in addition to being treasurer, was also general manager of the defendant corcorporation and as such in charge of its office and its books, and that shares of stock were there transferred. There is further testimony to the effect that, after the refusal of the secretary to make the transfer, plaintiff went to the general manager, Crabtree, who he found in front of his office, and then and there presented the certificates to him, and asked that they be transferred upon the books of the company, and that Crabtree then shook his head and said, " We cannot do that. We cannot transfer them." There was also testimony to the effect that, when plaintiff presented the stock to the secretary and demanded its transfer, the secretary refused to make it because Manager Crabtree told him not to, and that he (the secretary) then told plaintiff to take his stock to Crabtree and that he (Crabtree) would attend to it.

On this record the court instructed as follows: " And if you find  .  .  .  that the plaintiff presented the three certificates of stock in question to the secretary of the defendant, within business hours, at the office of defendant, or if not at said office then to the secretary in person at such place as you find he was located in said city, and that upon the presentation of said stock a request was made to said secretary to have the same transferred upon the books of the

*4. Transfer of stock: demand: conversion.*

corporation, and the said secretary refused to make such transfer, but referred him to the manager of defendant, one Crabtree, and you further find from the evidence that he proceeded to the office of said manager in said city of Des Moines, Iowa, and met the said manager, Crabtree, on the street in front of his said office, and made the demand for the transfer of said stock upon the books of the defendant corporation, which was refused, then you are instructed that the tender and request to have the stock in question transferred upon the books of defendant was a proper and legal tender and request, although the same was not within the office maintained by defendant." Under the circumstances disclosed there was no error in this instruction.

Nor did the court err in refusing defendant's fourth, fifth and sixth requests to the effect that the stock was not presented to a proper person or at a proper place. It was not necessary for plaintiff to invite the general manager across the threshold of his office before presenting the stock and demanding a transfer, where, as here, the manager made no objection to the time and manner of presentation, but absolutely refused to make the transfer requested. He waived a formal presentation and request inside the four walls of his office. *Heard v. Lodge,* 20 Pick. (Mass.) 53 (32 Am. Dec. 197). Under the circumstances no demand at the office of the company was required.

IV. During the trial defendant tendered plaintiff the certificates of stock which he had theretofore demanded. This was no defense to an action for the previous conversion of the stock. We shall not cite cases to so plain a proposition.

5. Same: tender.

V. As to defendant's petition for a new trial. This was based upon two grievances: (1) That plaintiff, after obtaining his judgment, participated in a stockholders' meeting and voted the stock purchased by him, and (2) that he gave false testimony upon the trial of the main case regarding the value of his stock. It

6. New trial: evidence.

is well settled that the matter of granting a new trial lies peculiarly within the sound discretion of the trial court. It is also the established rule of this court that the petition must allege a good defense to the action. Code, sections 4094 and 4096; *Tschohl v. Insurance Association,* 126 Iowa, 211. Whether this rule applies to a case where a new trial is sought because of newly discovered evidence we need not now decide. In so far as the application is based upon the grounds stated, the rule does apply, and as there is no allegation of a good defense in the pleading, and as the court must first determine whether or not there was a good defense to the action (Code, section 4096), there was no error in dismissing the petition. Moreover, the fact that, after plaintiff had obtained his judgment, he voted the stock purchased by him could not have been shown on the original trial, and is therefore no ground for a new trial by petition. As to the alleged fraud and false swearing, it is now the rule of this court that perjury or false swearing is not in itself sufficient fraud to justify the granting of a new trial. See *Graves v. Graves,* 132 Iowa, 199.

The original case was tried in May of the year 1905, and in that case plaintiff gave testimony as to the market value of the stock. On the hearing of the petition for a new trial, testimony was given to the effect that plaintiff appeared before the grand jury in Polk county, and then and there gave evidence to the effect that he had in March, 1904, examined the physical property owned by defendant, and found that it had no title thereto, and that Crabtree had made false representations regarding the nature, character, and extent of the property. This testimony was given after the trial of the case, and of course, could not have been given on the main trial. It is claimed, however, that it showed plaintiff's knowledge of the property at the time he gave his original testimony, and should be considered for that purpose. The difficulty with this is that the plaintiff, neither while on the witness stand nor when giving testi-

mony before the grand jury, testified as to the value of the physical property owned by the corporation. His testimony before the grand jury tended to show that Crabtree was perpetrating a fraud upon the company and upon investors, but if the stock had a market value at the time it was converted by defendant company this fraud should not defeat the plaintiff. It is true that plaintiff testified upon the main trial that he had no knowledge in October, 1903, of the value of the company's property, and, before the grand jury, that he examined the property in March of the year 1904; but there is no contradiction here, and nothing which negatives plaintiff's testimony to the effect that the stock was worth in the market fifty cents on the dollar in October of 1903. In the testimony before the grand jury plaintiff did not testify either as to the value of the stock or of the property. Moreover, defendant on the original trial went into this matter of the value of the physical property belonging to the corporation, and did not see fit to cross-examine the plaintiff with reference thereto. The real question on the original trial, relating to this matter, was the value of the stock when converted, and there is nothing in the testimony before the grand jury which would be at all controlling upon this matter, or which if admissible at all would have led to a different result. The trial court did not abuse its discretion in denying the petition for a new trial.

It follows that the judgment on each appeal must be, and it is, *affirmed.*