Glenn F. NELSON, Sam Scheidler, and James E. Maloney, Suing on Behalf of Themselves, Individually, and (pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order entered September 14, 1976 by Chief Judge Hanson) on behalf of members of a plaintiff class consisting of all persons who owned Common Stock of General United Group, Incorporated, an Iowa corporation, whose Common Stock interest was terminated by a purported merger of General United Group, Incorporated, with another corporation on or after May 17, 1973, and the heirs, successors by operation of law, legal representatives, and assigns of such persons, but excluding persons named as Defen-

dants in this Civil Action No. 75–100–2, and also excluding those persons who were members of plaintiffs' class in the case entitled James Perry Lamb, et al. v. United Security Life Company, a corporation, et al., Civil Action No. 10–295–2 in this Court, and also excluding those persons who filed timely requests for exclusion from the plaintiff class in this Civil Action No. 75–100–2, Appellants,

v.

ALL AMERICAN LIFE & FINANCIAL CORPORATION, a corporation, All American Life & Casualty Company, a corporation; General United Group, Incorporated, a corporation; United Security Life Company, a corporation; General United Life Insurance Company, a corporation, Appellees.

Jack Schroeder; Dale H. Squiers; Robert L. Busch; Everette E. Ballard; John W. Gardiner; R. Dean Ballard; Charles S. Northen, Jr.; and John D. Scarlett.

Glenn F. NELSON, Sam Scheidler, and James E. Maloney, Suing on Behalf of Themselves, Individually, and (pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order entered September 14, 1976 by Chief Judge Hanson) on behalf of members of a plaintiff class consisting of all persons who owned Common Stock of General United Group, Incorporated, an Iowa corporation, whose Common Stock interest was terminated by a purported merger of General United Group, Incorporated, with another corporation on or after May 17, 1973, and the heirs, successors by operation of law, legal representatives, and assigns of such persons, but excluding persons named as Defendants in this Civil Action No. 75–100–2, and also excluding those persons who were members of plaintiffs' class in the case entitled James Perry Lamb, et al. v. United Security Life Company, a corporation, et al., Civil Action No. 10–295–2 in this Court, and also excluding those persons who filed timely requests

for exclusion from the plaintiff class in this Civil Action No. 75–100–2, Appellees,

v.

ALL AMERICAN LIFE & FINANCIAL CORPORATION, a corporation, All American Life & Casualty Company, a corporation; General United Group, Incorporated, a corporation; United Security Life Company, a corporation; General United Life Insurance Company, a corporation, All American Life Insurance Company, a corporation, Appellants.

Jack Schroeder; Dale H. Squiers; Robert L. Busch; Everette E. Ballard; John W. Gardiner; R. Dean Ballard; Charles S. Northen, Jr.; and John D. Scarlett.

Nos. 88–2189, 88–2226.

United States Court of Appeals, Eighth Circuit.

Submitted May 8, 1989.

Decided Oct. 18, 1989.

Rehearing Denied Oct. 18, 1989.

J. Vernon Patrick, Birmingham, Ala., for appellants.

H. Blair White, Chicago, Ill., for appellees.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

This is a class action suit brought by minority shareholders resulting from a 1973 merger of General United Group, Inc. (GUG), an insurance company, into All American Life & Casualty Company and All American Life and Financial Corporation (collectively, All American). The plaintiffs objected to the merger, and some refused to cash in their shares at the $3.25 per share offered by All American. In their initial complaint, the plaintiffs alleged that the merger was accomplished in violation of various Iowa statutes and common law, as well as federal securities laws. A previous judgment for the defendants was reversed by this Court. On remand, plaintiffs prevailed and obtained compensatory damages, as well as $650,000 in punitive damages. The district court modified the judgment, entering judgment notwithstanding the verdict against the punitive damages and reducing the interest allowed the plaintiffs. Both sides appeal. We affirm in part and reverse in part.

BACKGROUND

Wheelabrator–Frye, Inc. (WFI) owned a majority interest in GUG. WFI accepted a purchase offer from All American in December 1971 at $3.07 a share. The agreement required that All American offer to purchase all minority interests in GUG within the next 12 months at $3.07 a share or better. All American decided to complete its purchase with a cash-out merger.

In 1973, a meeting of the stockholders was held to review the proposed merger. There were three classes of stock in the GUG corporation: preferred, Class B common, and common. All American owned 100% of the preferred and common B, but less than 1% of the regular common stock. Iowa law required approval of two-thirds of the stockholders for a merger, without indicating whether the approval of two-thirds of each class was necessary. Iowa Code § 496A.70 (1962). The proxy statements sent to the shareholders indicated that the affirmative vote of shares representing at least two-thirds of the common and Class B common stock were necessary to approve the merger. At the stockholders meeting, the merger proposal carried more than two-thirds of all outstanding stock, but only obtained the consent of those representing 41% of the regular common stock. Taking the position that the merger had been lawfully approved, All American demanded that minority shareholders sell back their stock at a cash-out price of $3.25, fixed after consultation with the banking firm of Dillon and Reed.[1] Some shareholders surrendered their shares and others did not. The defendants set aside the purchase money for the unredeemed shares.

Plaintiffs filed suit alleging federal securities violations and state law claims. The action was certified as a class action, including shareholders who had and had not surrendered their shares. There are approximately 12,000 common stockholders represented. In the first trial, the jury found for the defendants on all claims. Meanwhile, the district court had certified to the Iowa Supreme Court the interpretation of the merger voting law. The Iowa

---

1. All American could have converted all its stock into common stock. Had All American done so, it would have held 65.6% of GUG's common shares. We have already decided that this fact does not relieve any defendant of responsibility for the violation of the statute and conversion of the stock. *Shidler v. All American Life & Financial Corp.,* 775 F.2d 917, 926 (8th Cir.1985).

Supreme Court, after the jury verdict, held that Iowa law required separate voting by class. *Shidler v. All American Life & Financial Corp.*, 298 N.W.2d 318 (Iowa 1980). The district court then held a bench trial and determined that the defendants were still not liable under state law because there could be no private action based on the voting statute, a question the Iowa Supreme Court declined to answer. The district court entered judgment for the defendants on all claims.

The rejection of plaintiffs' claims under the Securities Exchange Act was affirmed by this Court in *Shidler v. All American Life & Financial Corp.*, 775 F.2d 917 (8th Cir.1985). We reversed the district court, however, on plaintiffs' state law claims. We concluded initially that the purpose of the Iowa voting provision is "to protect the minority shareholders." *Id.* at 921. Failure to comply is no mere "technical flaw." *Id.* at 925. Compliance with the voting statutes is thus a condition precedent to a valid merger. *Id.* As a result, we held that the successor to GUG had no right to effectively cancel the plaintiffs' shares and that the stockholders had a right to bring private causes of action for violation of the voting statutes.

> The Act vests minority shareholders with important rights incident to their stock ownership. The facts of this case show that the limited administrative enforcement scheme is inadequate to enforce the rights necessary to protect these shareholders. A private right of action for damages is necessary to make injured shareholders whole and to discourage future unlawful conduct in freeze-out mergers.

*Id.* at 924 (citation omitted). In addition, we held that in this case plaintiffs could pursue an action for conversion. "The defendants do not deny that the defendants had the intent to exercise dominion over the plaintiffs' shares. This intent is sufficient to support conversion liability." *Id.* at n. 10 (citations omitted). We left open whether an action for breach of contract could be maintained. We remanded this case "for a new trial on the state law claims." *Id.* at 919.

On remand, the plaintiffs presented evidence that the defendants did not disclose information to the shareholders and to Dillon and Reed regarding recent significant improvements in GUG's financial position that rendered the $3.25 per share an undervaluation. Meanwhile, All American's offer of $3.25 had frozen the market price for the minority shares. Plaintiffs also alleged that at the time the merger was contemplated and before it was approved, U.S.L.I. F.E. had approached GUG and All American, indicating an interest in acquiring the resulting corporation. U.S.L.I.F.E. and the resulting company, in June of 1973, announced a merger with an exchange rate on stock that plaintiffs allege was exactly equal to a ratio that had been discussed prior to the merger. The U.S.L.I.F.E. acquisition was approved by the shareholders of the resulting company and became effective in February of 1974. The plaintiffs also introduced two letters from the Iowa attorney representing GUG to the president of GUG and counsel for All American. The letters expressed concern that the company's proposed voting rules violated Iowa law requiring each class to vote separately. The district court instructed the jury to consider these letters only with respect to punitive damages and that they were irrelevant to the fair value of the stock.

The district court granted summary judgment for the plaintiffs on their conversion claim, directed a verdict for the plaintiffs on their implied cause of action claim, and directed a verdict for the defendants on the breach of contract claim. The court also directed a verdict for all individual defendants. The parties agreed that special interrogatories would be submitted, asking the jury to find the fair value of the stock as of 1973, the first merger, and as of February, 1974. The parties agreed that the judge would choose the correct date and base his decision as to damages on the jury's valuation. They also agreed that the district court would instruct the jury that the Iowa merger statute had been violated, but that the district court would not tell the jury that the defendants had been found liable on the conversion and implied cause

of action claims. The district court instructed the jury that it could only award punitive damages if it found malice. Plaintiffs introduced expert testimony on the stocks' value and introduced into evidence the reports prepared by their experts.

In October of 1987, the jury returned a verdict finding: (a) the fair value as of May, 1973, was $4.54, (b) the fair value as of February, 1974, was $5.40, and (c) the plaintiffs were entitled to punitive damages in the amount of $650,000. The defendants then raised the affirmative defense of *res judicata* and sought a judgment notwithstanding the verdict on the implied cause of action, the conversion claim and the verdict for punitive damages. The district court granted judgment notwithstanding the verdict as to punitive damages, and directed the entry of a judgment awarding plaintiffs compensatory damages using the February 1974 valuation of $5.40 per share. The court deducted $3.25 per share and granted interest to all plaintiffs on the difference between $3.25 and $5.40.

DISCUSSION

The plaintiffs and the corporate defendants (Defendants) appeal. Their principal concerns are the district court's judgments regarding Defendants' liability and punitive damages.[2]

I. Liability

A.

■ The district court directed a verdict for the plaintiffs on their implied cause of action, holding the Defendants strictly liable for their violation of Iowa law.[3] The Defendants object, arguing that Iowa would not attach strict liability to violations of the statute. We give great weight to the district court's construction of state law. *Cambee's Furniture, Inc., v. Doughboy Recreational, Inc.*, 825 F.2d 167, 171 (8th Cir.1987); *Dabney v. Montgomery*

*Ward & Co., Inc.*, 761 F.2d 494, 499 (8th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *Kansas City Power and Light Co. v. Burlington Northern*, 707 F.2d 1002, 1003 (8th Cir.1983).

In this case, unable to recite any Iowa case law sufficient to raise substantial questions about the district court's analysis, the Defendants rely on the more general claim that the imposition of strict liability in this case conflicts with the state legislature's intention to make Iowa corporate law certain, definite and predictable. We reject this argument.

Initially, the power to merge with less than the unanimous consent of all shareholders must be derived from the law of the state. *Shidler*, 775 F.2d at 925. Thus, compliance with state law "is a condition precedent to a valid merger" where some shareholders dissent. *Id.* Our earlier opinion made clear that, legally, no merger had occurred. We agree with the district court that even an unwillful violation of the merger rules creates a cause of action for which the corporation may be held strictly liable for compensatory damages. We have previously determined that a prospectively invalid merger or an accomplished invalid merger automatically gives rise to a stockholder right to enforce the law. *Id.* at 924. We conclude that where damages are sought, the corporation is strictly liable for compensation to a minority shareholder. Defendants' good faith cannot render an invalid merger suddenly lawful in derogation of Iowa law. Nor does good faith obviate the need to compensate the stockholders for the action which has been taken.

We do not believe that corporations are unfairly burdened by such a rule. First, while strict liability subjects corporations to liability even where the governing law is

---

**2.** Plaintiffs also challenge the decision of the district court granting a directed verdict for Defendants on their breach of contract claim. In light of our disposition of this appeal, we need not reach this issue. In addition, plaintiffs object to the district court's failure to require the Defendants to systematically account for the stock that has been redeemed. Such an accounting would facilitate the distribution of the

award to the members of the plaintiff class. We find no error in the denial of sanctions but leave this to the district court's discretion on remand.

**3.** Plaintiffs do not challenge the directed verdict in favor of the individual defendants.

unclear, potential damages are limited to any differences between the offered price and the stock's fair value, as they would be in an appraisal proceeding. To the extent that the offered price reflects fair value, stockholder suits brought for violation of the merger rules will usually be causes without much action.

Second, we feel that this rule is consistent with Iowa law and policy. Defendants rely on the analysis of Clarence Cosson, draftsman for the committee that modernized Iowa corporation law in 1959, which is incorporated as a supplement to the Iowa Code Annotated. They recite, however, only part of the purpose of the reform. In addition to easing the burdens placed on corporations incorporated in Iowa, the 1959 Act had other concerns, including "adequate protective provisions not only for the protection of minority shareholders from the majority, and of shareholders from abuses by management, but for the protection of the public as well." C. Cosson, *The Iowa Business Corporation Act*, 28A Iowa Code Ann. 1, 9 (West 1962); *see also, id.* at 33 (minority shareholders). Moreover, any interest in liberalizing the rules merely to attract outside corporations in the hope of increasing state tax revenues was repeatedly disclaimed. *Id.* at 7, 9.

Against this backdrop, we do not find the district court's legal analysis substantially deficient. We do not believe that it conflicts with Iowa law, legislative history or public policy.

### B.

■ In our earlier opinion, we concluded that under Iowa law, conversion is "the wrongful taking of control or dominion over property in derogation of another's possessory rights." *Shidler*, 775 F.2d at 925 (citations omitted). The district court relied on this formulation in granting summary judgment for the plaintiffs on this claim. We agree that, on these facts, no other conclusion is possible.

Defendants argue that an intervening state decision makes "good faith" an element to be considered in determining liability for a conversion, citing *Kendall/Hunt Publishing Co. v. Rowe*, 424 N.W.2d 235 (Iowa 1988). In *Kendall*, the Iowa Supreme Court endorsed the factors found in section 222A of the Restatement (Second) of Torts as useful for determining the seriousness of an interference with another's property rights. The factors are:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other.

424 N.W.2d at 247 (Restatement (Second) Torts § 222A(2)). Thus, Defendants argue, summary judgment was inappropriate because Iowa requires consideration of good faith in deciding whether a conversion occurred.

The Defendants' argument is without merit. Initially, we do not believe that *Kendall* substantially changed Iowa law. *Kendall* defined the tort in language similar to our own. "Conversion is the act of wrongful control or dominion over another's personal property in denial of or inconsistent with that person's possessory right to the property." *Kendall*, 424 N.W.2d at 247 (citations omitted). Moreover, the *Kendall* court affirmed the trial court's judgment without remand, finding the trial court's conclusion sufficient despite the *Kendall* court's subsequent reference to the Restatement.

In this case, all the Restatement factors other than intent point toward conversion, especially *duration*. The first two illustrations to the Restatement explain:

1. On leaving a restaurant, A by mistake takes B's hat from the rack, believing it to be his own. When he reaches the sidewalk A puts on the hat, discovers his mistake, and immediately re-enters the restaurant and returns the hat to the rack. This is not a conversion.

2. The same facts as in Illustration 1, except that A keeps the hat for three months before discovering his mistake and returning it. This is a conversion.

We think that under Iowa law no reasonable jury could find but that a conversion has occurred. While good faith may usually be an element of conversion, at some point in time the loss itself is severe enough from the original owner's perspective that there is a conversion, even in the case of an innocent wrongdoer. *See* Restatement (Second) of Torts § 244 (mistake of fact only of limited use as a defense). This is especially so where the defendant has had the use and derived the benefits of that which was taken. The Defendants have had and used the stock rights for sixteen years and cannot return the plaintiffs to their original position. The GUG stock no longer exists; the Defendants cancelled it. Trial transcript vol. XXV at 4082–83; *see* Restatement (Second) of Torts § 226 (destruction or alteration leads to conversion).

## II. Compensatory Damages

Both parties raise various objections to the award of compensatory damages. The Defendants object to the date chosen for the stock valuation and to the admission of certain evidence. The plaintiffs object to the district court's finding that those who elected not to redeem their stock, failed to mitigate their damages.

### A.

The Defendants object to the date chosen by the district court for the stock valuation. The district court fixed the date at a reasonable time after the conversion. The Defendants argue initially that damages should be valued at the time of the conversion. The difference is substantial because the jury found that soon after the merger the fair value of the GUG stock without the merger would have been $5.40 per share, while at the time of the merger it was worth only $4.54 per share.

We defer to a district court's construction of state law unless substantially deficient. In this case, the district court relied for its conclusion on two Iowa Supreme Court decisions. Each concluded that:

> [W]here the stock is marketable, the owner bringing an action for its value may recover the highest value which it attains between the time of conversion and a reasonable time for replacing it, if the purchase price has not been paid, or if the purchase price has been paid, then the highest value between the conversion and the time of bringing action, provided the bringing of action is not unreasonably delayed.

*Loetscher v. Dillon*, 119 Iowa 202, 93 N.W. 98, 101 (1903); *see also Doyle v. Burns*, 123 Iowa 488, 99 N.W. 195, 202 (1904). The *Doyle* court was concerned that neither party unjustly benefit but that the relief be "fully compensatory." *Id.*

The Defendants argue that this standard is not established in Iowa law, relying on *Dooley v. Gladiator Consolidated Gold Mines and Milling Co.*, 134 Iowa 468, 109 N.W. 864 (1906). The district court recognized that in *Dooley* the damages were measured from the date of the stock conversion. We agree with the district court, however, that *Doyle* establishes the controlling rule. The damages in *Dooley* may have been measured at the time of the conversion only because there was "no showing of value at other times." Annotation, *Measure of Damages for Conversion of Corporate Stock or Certificates*, 31 A.L.R.3d 1286, 1316 (1970). Where a plaintiff has sought damages from a later date, *Doyle* has been used. *Bryan & Co. v. Scurlock*, 190 Iowa 534, 180 N.W. 684, 686 (1920) ("It seems to be conceded that *Doyle* * * * governs; that is to say, plaintiff may recover the highest value these shares had during some period of time.").

In addition, we do not believe that the policies expressed in *Dooley* are violated in this case. The plaintiffs would not receive an unjust benefit from the anticipated appreciation of their stock in the year following the conversion. A stock's value can be quite volatile and can fluctuate greatly even from day to day. To restrict plaintiffs' recovery to the date the stock was

taken would encourage conversions of cyclical stocks.

Next, Defendants argue that we should distinguish between the damages owed by an innocent converter and those owed by a willful converter. We disagree. Iowa law does not recognize such a distinction. Iowa's only concern is that full compensation be awarded. *Doyle,* 99 N.W. at 202.

The district court recognized that the question of when to value converted stock divides courts across the country but properly deferred to Iowa's selection expressed in *Doyle. Accord United States v. Merchants Mutual Bonding Co. v. Madison,* 242 F.Supp. 465, 468 (N.D. Iowa 1965) (fluctuating commodity).

### B.

■ The Defendants called experts to the stand to compare the valuation estimates of each side. The Defendants suggested to the court that copies of both sides' reports be given to the jury as "demonstrative exhibits" that the jury could refer to during testimony. Plaintiffs' Appendix vol. 5 at 1276. All the reports were later admitted into evidence.

The Defendants argue that the plaintiffs' experts' valuation reports were inadmissible because they were prepared in anticipation of litigation. The Defendants concede that the testimony itself was admissible. They also concede that the admission of the plaintiffs' reports is not reversible error. Brief of Defendants–Appellees/Cross–Appellants at 40. Instead, they raise this issue for its cumulative effect, suggesting that when combined with the introduction of inadmissible evidence wih respect to punitive damages, the reports influenced the jury to favor the higher valuations of plaintiffs' experts.

We agree that the admission of the plaintiffs' reports into evidence may have been

erroneous to the extent that hearsay declarations were included. *Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254 (9th Cir. 1984). Under the circumstances, however, it was at best a harmless error.

First, we doubt that any prejudice resulted from the jury's viewing of the reports. According to the Defendants' own argument, if the jury was influenced to favor a higher valuation, it was likely because of other facets of the trial unrelated to statistical calculations. Second, even conceding that placing the reports in the jury's hands might add credence to the plaintiffs' experts' testimony, there is an insubstantial difference between the reports' use as demonstrative exhibits and their admission into evidence. We fail to discern what incremental prejudice could occur from their admission after the Defendants invited the jury to review the reports in open court. Third, the judge in this case was careful to repeatedly caution the jury that the reports were not offered for the truth of the matter, "but as an aid to allow you to follow along," *id.* at 1319, and for evaluating testimony. *Id.* at 1325. *See United States v. Affleck,* 776 F.2d 1451 (10th Cir. 1985) (cautionary instruction). Accordingly, we reject this claim.

### C.

■ Plaintiffs appeal that portion of the district court's judgment failing to order the payment to plaintiffs who did not redeem their stock of the $3.25 per share set aside, as well as interest on that sum. The district court granted interest to all plaintiffs on the difference between $3.25 and $5.40.[4]

The district court recognized that ordinarily, under Iowa statutes, prejudgment interest is to be awarded to make the plaintiff whole. Iowa Code Ann. § 535.3 (1987); *see also, Mermigis v. Servicemaster Industries, Inc.,* 437 N.W.2d 242, 248 (Iowa

---

**4.** We do not review today the award of interest to all plaintiffs on the difference between the amount offered and the value fixed. The Defendants have not in their brief or during oral argument questioned the award of interest on the difference between $3.25 and $5.40. While the Defendants have asked us to reduce the

valuation to $4.54 by changing the date for valuation, they have not argued that interest should be unavailable on the difference between $3.25 and the value fixed. Nor did either party list this aspect of the district court's order on any statement of issues.

1989); *Sheer Construction, Inc. v. W. Hodgman and Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982) (interest award not discretionary). The district court concluded, however, that those plaintiffs who had not redeemed their stock were under a duty to do so, and thus failed to mitigate their damages. We agree with the district court that at issue is the reasonableness of the decision by some plaintiffs not to redeem their stock. *See Welke v. City of Davenport*, 309 N.W.2d 450 (Iowa 1981); Restatement (Second) of Torts § 918 (1979) (duty to mitigate). On these facts, however, we find the district court's factual determination regarding reasonableness to be clearly erroneous.

The district court concluded that "Nothing in the law required them to hold onto these shares * * *." Order at 58 (July 19, 1988). While that may be true in retrospect, we do not believe that the decision at the time by some plaintiffs to retain the stock was unreasonable. Defendants urged that the taking of the sum by other shareholders constituted accord and satisfaction.[5] While the trial court ultimately rejected Defendants' proposed jury instructions to that effect, plaintiffs could not be sure how the issue might be resolved. The district court's ultimate conclusion that they were not required to retain their stock, while correct, does not mean that they had an affirmative duty to surrender it. We believe that reasonable people would be justified in not surrendering their stock under these circumstances. We therefore find the district court's contrary conclusion to be clearly erroneous. Moreover, Defendants would unjustly benefit by retaining the appreciation of the funds set-aside, especially in light of Iowa's strong belief that the award of interest is necessary to full compensation. *See, e.g., Oskaloosa Food Prods. Corp. v. Aetna Casualty & Sur. Co.*, 337 N.W.2d 521, 523 (Iowa 1983) (should award interest even where plaintiff fails to request it).

### III. Punitive Damages

The district court permitted the plaintiffs' punitive damages claim to be tried to the jury. It awarded plaintiffs $650,000 in damages. The court subsequently granted Defendants' motion for judgment notwithstanding the verdict. The plaintiffs seek to have the verdict on punitive damages restored. The Defendants defend the court's ultimate decision but argue that the submission of the issue to the jury tainted other decisions the jury was required to make.

### A.

■ The district court concluded that as a matter of law, plaintiffs were not entitled to punitive damages. Iowa law requires a showing of wantonness or recklessness evidencing complete disregard for the plaintiffs' rights. *Kehm v. Proctor & Gamble Manuf. Co.*, 724 F.2d 613, 623 (8th Cir. 1983). Where there is honest disagreement over an act or omission's legality because the directly controlling law is unclear or ambiguous, complete disregard will usually not be found. *Pester Refining Co. v. Mapco Gas Products, Inc.*, 845 F.2d 1476, 1487 (8th Cir.1988).

In this case, GUG and All American were unsure how to construe the requirements of the Iowa voting statute. On advice of counsel, they did not require approval by class. While their conduct proved ultimately unlawful, we agree with the district court that their interpretation of Iowa law was not the product of complete disregard for shareholder rights. The voting statute was ambiguous, *Shidler*, 775 F.2d at 927 n. 14, and the adherence to one of two reasonable interpretations of it does not give rise to punitive damages. *Pester*, 845 F.2d at 1487; *C. Mac. Chambers Co., Inc. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 599 (Iowa 1987).

### B.

■ Defendants argue that the submission of the punitive damages issue to the jury tainted the jury's verdict. They object

---

**5.** We believe that this insistance makes an offer conditional. Conditional offers do not stop the accrual of interest. *Miller v. Merritt*, 233 Iowa 230, 8 N.W.2d 726 (1943).

to the introduction of evidence and the discussion of various subjects, including: GUG's and All American's deliberations regarding the voting procedures, accounting memorandum urging purchase of minority shares in light of increasing earnings, other evidence regarding increasing earnings, the U.S.L.I.F.E. merger, letters between counsel regarding the proper interpretation of Iowa law and the stock options of corporate executives. The district court denied Defendants' motions for judgment notwithstanding the verdict and for a new trial.

Even if their argument is correct, Defendants would not be entitled to final judgment in their favor unless there was no other evidence to support a finding of liability. Having decided that the law and the facts support a finding of liability, we do not believe the Defendants are entitled to a judgment notwithstanding the verdict. Thus, we need only review the district court's denial of Defendants' motion for a new trial.

Attempting to decide what factors may have influenced the jury's decision is difficult for us to do. For this reason, review of a motion for a new trial is initially made by the trial court. We will reverse that court's decision only where there is an abuse of discretion. *Pitts v. Electro–Static Finishing, Inc.*, 607 F.2d 799, 803 (8th Cir.1979). The district court entered judgment for the plaintiffs on liability and selected the date for the stocks' valuation. Because only the valuation of the stock was left for the jury, we must decide to what extent the valuation was adversely influenced by the punitive damages evidence. The district court believed that there was little prejudice, writing:

> Losing counsel in any case tend to presume that they lost because the jurors let their worst instincts take hold of them, and were guided not by the volumes of competent evidence which could have led a rational trier of fact to their conclusion, but by the few pieces of supposedly irrelevant information snuck in by opposing counsel. While there will be cases in which a court must agree and order a new trial, this is not such a case.

Order at 55 (July 19, 1988).

At the outset, we do not agree that all of the evidence was irrelevant. Assessment of the stock's value in this case was difficult. The evidence shows that the stock was rapidly appreciating and that the trading market was frozen by All American's offer of $3.25 per share.[6] Moreover, the jury was asked to estimate the value of the stock if the merger had not occurred. In such a case, some of the evidence relevant to valuation is sure to be indirect and circumstantial. We conclude therefore that some of the objected-to evidence was clearly relevant to the jury's determination. The Defendants' memorandum discussing stock appreciation and the evidence regarding the U.S.L.I.F.E. transaction each shed some light on the stocks' value.[7] In general, the evidence is relevant to impeach Defendants' estimate of $3.25.

In addition, a defendant must do more than argue that there was some prejudicial evidence admitted. A defendant must also convince us that, because of its admission,

---

**6.** The trial court was persuaded in earlier proceedings that both of these assertions were true.

24. On December 31, 1971, another news release was issued by All American stating, in substance, that it agreed to pay $3.07 per common share of GUG in cash and notes. The announcement also stated that All American intended to pay GUG common shareholders cash or securities having a value not less than the price per share paid pursuant to the agreement. These announcements established a cap on the market for the publicly traded shares of GUG, that is, a price above which the shares would not rise.

25. GUG earnings showed a dramatic increase in the early 1970's. The corporations earnings increased from a $17,647.00 loss before extraordinary items in 1971 to a gain of $1,457,213.00 in 1972.

Findings of Fact and Conclusions of Law at 7 (Sept. 30, 1982).

**7.** We do not find controlling *Grigsby v. C.M.I. Corp.*, 765 F.2d 1369 (9th Cir.1985), where it was held the negotiations for the sale of a parent was not material information under Rule 10b–5 of the Securities Exchange Act of 1934 required to be disclosed to shareholders of a subsidiary. It is not clear that legal relevancy and materiality under the Act are synonymous. In addition, judgments about both are principally dependent on the facts and circumstances of each case.

the award of damages was outrageous or shocking. " 'Assessment of damages is within the sound discretion of the jury.' * * * That assessment will not be overturned by this Court unless there is a 'plain injustice' or a 'monstrous' or 'shocking' result." *Ferren v. Richards Mfg. Co.*, 733 F.2d 526, 531 (8th Cir.1984) (quoting *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 448 (8th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961)).

We conclude that the jury's verdict is not outrageous. The jury's valuations were supported by the testimony of the plaintiffs' experts. The Defendants, in contrast, focused on May, 1973, as the proper date for valuation. The jury properly performed its fact-finding task. It chose a valuation for February, 1974, based on the evidence and testimony, and the judge subsequently selected that date as the appropriate one for fixing damages. In light of these facts, we do not feel that this is one of "those rare situations where we are pressed to conclude that there is a plain injustice * * *." *Hollins v. Powell*, 773 F.2d 191, 197 (8th Cir.1985), *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986).[8] We find no abuse of discretion in the district court's denial of the motion for a new trial.

### C.

■ Included in Defendants' arguments is the contention that their good faith had already been litigated in earlier proceedings and should not have been retried to the jury.[9] We agree only in part.

Issues finally determined in the course of litigation by a court of appeals must be given preclusive effect by the trial court on remand. *Houghton v. McDonnell Douglas Corp.*, 627 F.2d 858, 864–65 (8th Cir.1980). The scope of the remand determines what can be relitigated; "[a] mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Id.; Richardson v. Communications Workers of America*, 486 F.2d 801 (8th Cir.1973). Prior decisions made by the same trial court in a continuing proceeding are less constraining. *See generally,* Moore's *Federal Practice* ¶ 0.416[2] at 517 (2d ed. 1988); Wright, Miller & Cooper, *Federal Practice and Procedure* § 4478 (1981). This is especially so where a new trial must be held. "Following the grant of a new trial, the second trial, absent any stipulations by the parties to the contrary, proceeds *de novo. Day v. Amax, Inc.*, 701 F.2d 1258, 1263 (8th Cir.1983).

In this case, we remanded "for a new trial on the state law claims." *Shidler*, 775 F.2d at 919. The district court did err by allowing the plaintiffs to submit into evidence the letters and memorandum showing that GUG and All American were on notice that their interpretation of the Iowa statute was wrong. Such error, however, was not prejudicial. *See supra* note 8. Primarily, the evidence admitted was used to show that the $3.25 was an undervaluation.

We believe that the district court's actions were consistent with our mandate. Our prior opinion finally determined that there was no negligence with respect to the representation in the proxy statement that the approval of two-thirds of all shares was

---

8. Because the jury was able to make a separate award for punitive damages, we will not presume that they sought to use the compensatory damages to punish the Defendants. This is not a case like *Vanskike v. A.C.F. Industries, Inc.*, 665 F.2d 188 (8th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), where punitive damages were not submitted to the jury and where plaintiff's counsel asked the jury to use the award of compensatory damages to punish the defendants. Moreover, in this case the trial court instructed the jury that the contested evidence and the issue of malice were relevant only to the punitive damages.

9. Defendants argued below that various issues should be excluded under the law of the case doctrine, which governs issues considered but not yet final. After judgment, the district court permitted them to amend their answer and to assert the defense of *res judicata*, which addresses itself to issues finally determined on appeal. In light of the Defendants' continuing insistence that certain matters were previously resolved, we find no error in the permission granted to amend the answer.

required. *Shidler*, 775 F.2d at 927. We based our conclusion on the ambiguity of the statute. *Id.* n. 14. We carefully sorted through the various remaining issues, affirming the district court's judgment on several, rejecting Defendants' claims as to others, and generally leaving open to the district court how the trial should be structured and conducted in light of our opinion. *Id.* at 927–28. We did not decide what the fair value of the stock was. For this reason, for example, Defendants themselves relitigated whether their offer had frozen the market price despite the trial court's earlier determination that it had. *See supra* note 6.

Our finding that there was no negligence with respect to the statutory interpretation certainly did not foreclose the admission of evidence relevant to the stock's valuation, and the credibility and sufficiency of the $3.25 per share offer. Relevant to the credibility and sufficiency of that offer is evidence about the stocks' appreciation and the state of mind of the corporate directors in settling upon a purchase price. While such evidence cannot support an award of punitive damages for violation of the statute where that statute was ambiguous, the evidence admitted is nevertheless relevant to damages.

CONCLUSION

This litigation has dragged on for well over fourteen years. Nearly four years ago, we concluded that the violation of Iowa law rendered the merger invalid. We believe that the district court's selection of date for calculating damages was not legally deficient, nor was the jury's valuation unsupported by the evidence. On the issues before us, we only disagree with the right of some plaintiffs to the original purchase money for the unredeemed shares and to interest on the sums long held by the Defendants. We reverse this aspect of the district court's order and direct the district court to award those plaintiffs who did not surrender their stock the full value of their shares with interest. We remand this case to the district court with instructions that it recalculate the compensatory damages due the plaintiffs consistent with this opinion and bring this matter to a final disposition.